# Exhibit C

**IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PA**
**CIVIL DIVISION**

MYLAN INC., MYLAN
PHARMACEUTICALS INC., MYLAN
TECHNOLOGIES, INC. and MYLAN
SPECIALTY LP,

                Plaintiffs,

    v.

KIRKLAND & ELLIS LLP,

                Defendant.

No.: 2015-2377

**MEMORANDUM OF LAW IN**
**SUPPORT OF PLAINTIFF'S MOTION**
**FOR PRELIMINARY INJUNCTION**



FILED
MAY 01 2015
P.R. MATHENY
PROTHONOTARY

ROGER J. ECKER, ESQ.
PEACOCK KELLER & ECKER, LLP
70 East Beau Street
Washington, PA 15301
Tel.: 724-222-4520
Fax: 724-222-3318
REcker@PeacockKeller.com

WILLIAM PIETRAGALLO, II, ESQ.
JOHN A. SCHWAB, ESQ.
PIETRAGALLO GORDON ALFANO BOSICK &
RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Tel.: 412-263-2000
Fax: 412-263-2001
WP@Pietragallo.com
JAS@Pietragallo.com

MICHAEL S. SOMMER, ESQ.
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel.: 212-999-5800
Fax: 212-999-5899
msommer@wsgr.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND .......................................................................................2

ARGUMENT .................................................................................................................2

    I.     A PRELIMINARY INJUNCTION IS NECESSARY TO PREVENT
          IMMEDIATE AND IRREPARABLE INJURY TO PLAINTIFFS. .....................2

    II.    MYLAN HAS DEMONSTRATED A LIKELIHOOD OF SUCCESS ON
          THE MERITS OF ITS UNDERLYING CLAIMS. ..........................................3

          A.     K&E has Breached its Fiduciary Duty to Mylan. .......................................3

          B.     K&E is Prohibited from Representing Teva Under Pa.R.P.C. 1.7. .............7

          C.     K&E is Prohibited from Representing Teva Under Pa.R.P.C. 1.9. .............9

    III.   THE INJUNCTION IS NECESSARY TO PREVENT IMMEDIATE
          AND IRREPARABLE HARM TO MYLAN. ......................................................12

    IV.   THE BALANCE OF THE EQUITIES FAVORS AN INJUNCTION. .................14

    V.    THE INJUNCTION WILL PROPERLY RESTORE THE PARTIES TO
          THEIR STATUS AS IT EXISTED PRIOR TO K&E'S BREACH OF
          FIDUCIARY DUTY. .........................................................................................16

    VI.   THE INJUNCTION IS REASONABLY SUITED TO REMEDY THE
          HARM TO MYLAN. ..........................................................................................16

    VII.  THE INJUNCTION WILL NOT ADVERSELY AFFECT THE PUBLIC
          INTEREST. .........................................................................................................17

CONCLUSION .............................................................................................................17

## TABLE OF AUTHORITIES

Page

### CASES

*Allman v. Sears, Roebuck & Co.*,
No. CIV. A. 87-6074,
1988 U.S. Dist. LEXIS 11659 (E.D. Pa. Oct. 17, 1988).........................7, 8, 9, 17

*Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt. Ltd.*,
456 Fed. Appx. 184 (3d Cir. 2012).......................................................15

*Cinema 5, Ltd. v. Cinerama, Inc.*,
528 F.2d 1384 (2d Cir. 1976)...............................................................7

*Consol. Theatres, Inc. v. Warner Bros. Circuit Mgmt. Corp.*,
216 F.2d 920 (2d Cir. 1954).................................................................4

*Dougherty v. Phila. Newspapers, LLC*,
85 A.3d 1082 (Pa. Super. Ct. 2014) .............................................. passim

*Estate of Pew*,
655 A.2d 521 (Pa. Super. Ct. 1994) ...........................................11, 14

*Greenwood Land Co. v. Omnicare, Inc.*,
No. CIV. A. 09-686,
2009 U.S. Dist. LEXIS 74374 (W.D. Pa. Aug. 20, 2009) ...............10, 11, 12

*The Hyman Cos., Inc. v. Brozost*,
964 F. Supp. 168 (E.D. Pa. 1997) ...............................4, 7, 13, 16, 17

*IBM v. Levin*,
579 F.2d 271 (3d Cir. 1978).................................................................7

*Imbesi v. Imbesi*,
No. CIV. A. 01-1259,
2001 U.S. Dist. LEXIS 17689 (E.D. Pa. Oct. 30, 2001)........................8, 12

*Int'l Longshoremen's Ass'n, Local Union 1332 v. Int'l Longshoremen's Ass'n*,
909 F. Supp. 287 (E.D. Pa. 1995) ......................................................17

*J&J Snack Foods Corp. v. Kaffrissen*,
No. CIV. A. 98-5743,
2000 U.S. Dist. LEXIS 6277 (E.D. Pa. May 9, 2000) ............................8

*James v. Teleflex, Inc.*,
No. CIV. A. 97-1206,
1999 U.S. Dist. LEXIS 1961 (E.D. Pa. Feb. 24, 1999) .........................10

*Kaminski Bros., Inc. v. Detroit Diesel Allison*,
638 F. Supp. 414 (M.D. Pa. 1985) .......................................................8

*Kos Pharm., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004)................................................................................15

*Levy v. Senate of Pa.*,
    619 Pa. 586 (2013) ....................................................................................4, 17

*Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*,
    529 Pa. 241 (1992).............................................................................. passim

*SEIU Healthcare Pa. v. Commonwealth*,
    104 A.3d 495 (Pa. 2014) .......................................................................3, 14, 16

*Sovereign Bank v. Harper*,
    674 A.2d 1085 (Pa. Super. Ct. 1996) ...........................................................12

*Stockton v. Ford*,
    52 U.S. 232 (1850)...................................................................................1, 4

*Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*,
    573 Pa. 637 (2003) .......................................................................................3

*Tran v. Meyers*,
    No. CIV. A. 95-2587,
    1995 U.S. Dist. LEXIS 14597 (E.D. Pa. Oct. 2, 1995)........................................9

*W. Penn Specialty MSO, Inc. v. Nolan*,
    737 A.2d 295 (Pa. Super. Ct. 1999)............................................................2, 12

## RULES

Pa.R.P.C. 1.7 ..................................................................................... passim

Pa.R.P.C. 1.9 ..................................................................................... passim

Plaintiffs Mylan Inc., Mylan Pharmaceuticals Inc., Mylan Technologies, Inc., and Mylan Specialty LP (collectively, "Mylan") respectfully submit this Memorandum of Law in support of their motion for a preliminary injunction preventing Kirkland & Ellis LLP ("K&E") from representing Teva Pharmaceutical Industries Ltd. ("Teva") in connection with Teva's unsolicited and hostile efforts to acquire Mylan.

## PRELIMINARY STATEMENT

In January 2013, after repeated efforts by K&E to obtain its business, Mylan made the decision to retain K&E as its trusted advisor in connection with numerous matters involving highly significant products. During the course of that representation, which is ongoing, Mylan entrusted K&E with highly confidential and sensitive information that is critical to Mylan's business strategy and success. In so doing, Mylan relied on the fundamental principle – recognized by the Pennsylvania Supreme Court – that "'[t]here are few of the business relations of life involving a higher trust and confidence than those of attorney and client or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice[.]'" *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 253-54 (1992) (quoting *Stockton v. Ford*, 52 U.S. 232, 247 (1850)). As such, an attorney owes his client a duty of "undivided loyalty," and public trust in the legal profession hinges on rigorous protection against attorney conflicts of interest. *Id.* at 253.

This motion stems from K&E's contravention of these essential principles. Less than two weeks ago, on April 21, 2015, Mylan learned that its competitor, Teva, is engaging in a hostile takeover attempt to acquire Mylan N.V. and its subsidiaries. And in addition to this news, Mylan was shocked to discover that *K&E* – the law firm that Mylan believed was its trusted and loyal

counsel – is the law firm that is representing Teva in its efforts.  K&E is thus affirmatively assisting a direct competitor in taking actions that are directly adverse to (and unwelcome by) Mylan.  K&E's decision to accept the engagement with Teva amounted to a clear breach of its fiduciary and professional duties for at least two reasons.  First, Mylan is a current client and finds itself in an adverse situation as a direct result of K&E's actions.  Second, even if Mylan were not a current client – which it is – Mylan is a former client with respect to other issues that are substantially related to K&E's current representation of Teva.  Mylan urges this Court to put an immediate stop to K&E's violations.

## FACTUAL BACKGROUND

For the factual background of this motion, the Court is respectfully referred to the declaration of Douglas Miner (the "Miner Decl."), the contents of which are incorporated herein by reference.

## ARGUMENT

**I.     A PRELIMINARY INJUNCTION IS NECESSARY TO PREVENT IMMEDIATE AND IRREPARABLE INJURY TO PLAINTIFFS.**

The purpose of this motion for preliminary injunction is to "preserve the status quo" as it existed before K&E's wrongful conduct, "thereby preventing irreparable injury or gross injustice." *Maritrans*, 529 Pa. at 259; *see also W. Penn Specialty MSO, Inc. v. Nolan*, 737 A.2d 295, 298 (Pa. Super. Ct. 1999) ("A preliminary injunction operates to maintain affairs between the parties as they existed prior to the underlying dispute and 'to compel a wrongdoer to give up the status he appropriated before an action could have been instituted against him.'") (citation omitted).  "Moreover, '[a] court may restrain conduct which it feels may develop into a breach of ethics; it is not bound to sit back and wait for a probability to ripen into a certainty'. . . .  The

courts do not have to wait until the derelict attorney appears before it." *Maritrans*, 529 Pa. at 255 (internal marks and citation omitted).

In assessing whether a preliminary injunction is warranted, the Court must consider whether: "(1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest." *SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 501-02 (Pa. 2014); *see also Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 646-47 (2003) (describing elements).  To establish a right to relief, the party seeking an injunction is not required to prove the merits of the underlying claim, "but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." *SEIU*, 104 A.3d at 506.

As set forth below, each of these factors weighs heavily in favor of enjoining K&E from further violating its fiduciary and professional duties by its representation of Teva in connection with Teva's efforts to acquire Mylan.

## II.   MYLAN HAS DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS UNDERLYING CLAIMS.

### A.   K&E has Breached its Fiduciary Duty to Mylan.

The Pennsylvania Supreme Court has repeatedly observed that the attorney-client privilege "'is deeply rooted in our common law' and is 'the most revered of our common law

-3-

privileges.'" *Dougherty v. Phila. Newspapers, LLC*, 85 A.3d 1082, 1086 (Pa. Super. Ct. 2014) (quoting *Levy v. Senate of Pa.*, 619 Pa. 586, 596-97 (2013)). "'[I]t is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.'" *Maritrans*, 529 Pa. at 253-54 (quoting *Stockton*, 52 U.S. at 247).

Attorneys owe a fiduciary duty to their clients, one that "demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest[.]" *Maritrans*, 529 Pa. at 253. A breach of that duty is a violation of Pennsylvania's Rules of Professional Conduct and is actionable at common law. *Id.* (collecting cases); *accord The Hyman Cos., Inc. v. Brozost*, 964 F. Supp. 168, 172 (E.D. Pa. 1997) (citing *Maritrans*). Indeed, the Pennsylvania Supreme Court has explained that "[l]ong before the . . . Rules of Professional Conduct were adopted, the common law recognized that a lawyer could not undertake a representation adverse to a former client in a matter 'substantially related' to that in which the lawyer previously had served the client." *Maritrans*, 529 Pa. at 256 (citing *Consol. Theatres, Inc. v. Warner Bros. Circuit Mgmt. Corp.*, 216 F.2d 920 (2d Cir. 1954)).

Here, K&E is representing Teva in a matter that is directly adverse to Mylan's interests and is in possession of Mylan's confidential client information which would allow it to advance the interests of Teva at Mylan's substantial expense. This is a clear violation of K&E's fiduciary duty to Mylan. The Miner Declaration makes clear that in the course of K&E's many undertakings on behalf of Mylan, including representations that are ongoing, it has been entrusted with highly confidential, privileged and proprietary information crossing a broad spectrum of Mylan's business. For example, K&E was provided with extensive confidential material relating to Mylan's legal and regulatory strategies concerning EpiPen®, a widely

prescribed and highly significant Mylan product. K&E also has been entrusted with confidential information relating to the generic version of Benicar®, so that K&E can effectively represent Mylan in various ongoing proceedings in federal court. In fact, just this week, Mylan appeared in court and filed a brief on Mylan's behalf in connection with the Benicar® litigation. And, as recently as February 2015, K&E prepared work product for Mylan's review and consideration in connection with its lidocaine patch product. K&E has been granted access to confidential Mylan information in the course of its other undertakings on behalf of Mylan over the past two years, including FDA regulatory proceedings and highly proprietary pricing strategies for many of Mylan's products. In short, there can be no dispute that K&E, through its representation of Mylan, has gained a granular, intensive understanding of Mylan's confidential information, all of which is highly valuable to Mylan, and none of which would have been disclosed to K&E absent the assurances of undivided loyalty that K&E provided to Mylan.

This confidential, highly sensitive information that K&E obtained about Mylan's strategies and products – including products that have yet to be approved by the FDA – would be integral to Teva's formulation of its hostile acquisition strategy on which it is being directly advised and represented by K&E. It is clear that Teva's valuation of Mylan as a target entity would be shaped by information that Mylan has disclosed to K&E, such as strategic memoranda and analyses relating confidential communications with the FDA, highly proprietary pricing strategies for many of Mylan's products, and other information relating to existing products as well as products that have yet to be launched by Mylan. Indeed, it is hard to imagine a clearer case of confidential information entrusted to K&E by Mylan being more relevant to Teva in its acquisition effort. The process of seeking to acquire a company is entirely tied to assessing the assets of the target – what those assets are, what value they have, what income stream they are

likely to generate, when products are likely to be brought to market, and what price margins the products can generate. These are the precise issues on which K&E has been advising Mylan with respect to its business, and yet now K&E wants to shift its allegiances away from Mylan and to Teva with respect to these precise issues in the takeover context. It is hard to imagine a situation where Mylan's confidential information is at greater risk of being used to its detriment by the law firm that it had every reason to believe was loyal to Mylan. K&E's conduct amounts to a clear breach of its fiduciary duties to Mylan.

The Pennsylvania Supreme Court confronted a similar situation in *Maritrans*. In that case, Maritrans sought injunctive relief and damages against its former law firm, Pepper Hamilton, when the firm subsequently represented its competitors in matters substantially related to those in which the firm had represented plaintiff. 529 Pa. at 246. Pepper Hamilton had become "intimately familiar" with Maritrans' operations and "gained detailed financial and business information" regarding the company, including its long-term objectives, competitive strategies, and finances. *Id.* at 247-48. Armed with this information, the firm undertook to represent several of Maritrans' competitors in their attempts to seek employee wage and benefit reductions "in order to compete more effectively with, i.e., to win business away from, Maritrans." *Id.* at 248. The Supreme Court found that Pepper Hamilton's conduct constituted a breach of its common law fiduciary duty owed to Maritrans, and reinstated the trial court's preliminary injunction barring the firm from representing the competitors. *Id.* at 261-62. The Supreme Court explained that even if Pepper Hamilton had not yet revealed plaintiff's confidential information, the greater the firm's involvement in the client's affairs "the greater the danger that confidences (where such exist) will be revealed." *Id.* at 260. Even a threatened

-6-

violation "gives rise to a request for injunctive relief to prevent the breach of duty." *Id.* at 253; *accord Hyman*, 964 F. Supp. at 172.

*Maritrans*, however, is not the sole guide for determining whether K&E has violated its fiduciary duties to Mylan.  The common law prohibition against attorney conflict of interest is codified and incorporated into the Pennsylvania Rules of Professional Conduct.  *See Hyman*, 964 F. Supp. at 173-74 (granting preliminary injunction enjoining plaintiff's former in-house counsel from providing certain legal services to its competitor, where specific knowledge acquired by former counsel fell within the prohibition of Rule 1.9); *Dougherty*, 85 A.3d at 1087 ("This same duty of confidentiality is protected through Rule 1.9(a) of the Rules of Professional Conduct[.]").  In this case, as explained below, K&E has violated both Rules 1.7 and 1.9.

**B.      K&E is Prohibited from Representing Teva Under Pa.R.P.C. 1.7.**

Rule 1.7 of Pennsylvania's Rules of Professional Conduct provides in pertinent part that a lawyer shall not represent a client if "the representation of one client will be directly adverse to another client," unless each client gives informed consent.  Pa.R.P.C. 1.7(a)(1).  The two representations do not have to be related; it is enough that the clients' interests are adverse.  *Id.* cmt. 6 ("[A] lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated."); *see also Allman v. Sears, Roebuck & Co.*, No. CIV. A. 87-6074, 1988 U.S. Dist. LEXIS 11659, at *12-13 (E.D. Pa. Oct. 17, 1988) (citing *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976)).  In such a situation, courts apply a *prima facie* standard of review, which carries a heavy presumption against the simultaneous representation of adverse parties.  *Id.*

Accordingly, it is well-settled that it is a violation of counsel's "duty of undivided loyalty" to represent two clients whose interests are adverse.  *Allman*, 1988 U.S. Dist. LEXIS 11659, at *12-13 (citing *Cinema 5*, 528 F.2d at 1386; *IBM v. Levin*, 579 F.2d 271, 283 (3d Cir.

1978); *Kaminski Bros., Inc. v. Detroit Diesel Allison*, 638 F. Supp. 414, 415 (M.D. Pa. 1985)).

Any doubt that a lawyer has violated his ethical obligations should be resolved in favor of

disqualification. *Id.*; *J&J Snack Foods Corp. v. Kaffrissen*, No. CIV. A. 98-5743, 2000 U.S.

Dist. LEXIS 6277, at *5 (E.D. Pa. May 9, 2000); *Imbesi v. Imbesi*, No. CIV. A. 01-1259, 2001

U.S. Dist. LEXIS 17689, at *4 (E.D. Pa. Oct. 30, 2001).

    As set forth in detail in the Miner Declaration, Mylan is a current client of K&E in

connection with several matters. *See* Miner Decl. at ¶¶ 3, 8- 12.  Indeed, in the Olmesartan

matter, K&E has appeared in federal court on Mylan's behalf as recently as this past week and

filed a brief in federal court yesterday, April 30, 2015. *See* Miner Decl. at ¶ 7.  And yet, it was

announced just last week that K&E has now also taken on the representation of Teva in its

hostile efforts to acquire Mylan.  It is difficult to imagine a transactional scenario in which two

clients' interests are more adverse than in the hostile takeover context in which one client is

attempting to acquire the other against its wishes.  Mylan did not consent to K&E's

representation of Teva.  Accordingly, there cannot be a clearer violation of Pa.R.P.C. 1.7 – by

accepting the Teva engagement, K&E is now simultaneously representing the interests of two

parties who are adverse to each other.

    In *Allman*, the defendants in a personal injury case moved to disqualify Post & Schell as

counsel for a third-party defendant.  The court granted the motion because the defendants were

represented by Post & Schell in connection with a separate and ongoing litigation, finding that

the concurrent representation of clients with adverse interests was prohibited by Rule 1.7.

*Allman*, 1988 U.S. Dist. LEXIS 11659, at *2.  The court explained that the presumption against

simultaneous representation required such an outcome, particularly in light of the fact that

defendants did not consent to the concurrent representation.  Nor was the court persuaded by

-8-

Post & Schell's argument that it could cure the conflict by erecting a screening mechanism, as such a solution is irrelevant in light of the fundamental principle of upholding an attorney's duty of loyalty to his clients. *Id.* at *4; *see also Tran v. Meyers*, No. CIV. A. 95-2587, 1995 U.S. Dist. LEXIS 14597, at *10 (E.D. Pa. Oct. 2, 1995) (granting motion to disqualify under Rule 1.7 where "[n]o reasonable lawyer could fail to perceive that . . . representation of each client might be materially limited by her responsibilities to the other").

The application of these cases to the instant situation is clear: here, K&E is simultaneously representing both Mylan and Teva, and is doing so in direct contravention of Mylan's interests. Mylan would never have consented had it been made aware of such a representation, and it will not give its consent now. K&E's concurrent representation is a violation of its "duty of undivided loyalty" to Mylan, and, as in *Allman*, Rule 1.7 requires that K&E be removed as counsel to Teva.

### C.   K&E is Prohibited from Representing Teva Under Pa.R.P.C. 1.9.

Even if Mylan were not a *current* client of K&E (which it is) and was considered only a *former* client, the result would still be that K&E must be disqualified from its representation of Teva. Pa.R.P.C. 1.9 protects "[t]his same duty of confidentiality" as is encompassed within an attorney's fiduciary duty. *Dougherty*, 85 A.3d at 1087. The rule provides, in pertinent part, that a lawyer who has formerly represented a client in a matter "shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client[.]" Pa.R.P.C. 1.9(a). Because K&E's representation of Teva in its hostile effort to acquire Mylan is directly adverse and substantially related to its prior representation of Mylan, K&E must be enjoined from continuing as Teva's counsel.

In considering a motion for disqualification under Rule 1.9, the court must find (1) the existence of a former attorney-client relationship which is adverse to the subsequent

-9-

representation by the law firm of the current client; (2) that a member of the law firm acquired knowledge of confidential information from or concerning the former client during the course of representation; and (3) that the subject matter of the two representations is "substantially related." *Dougherty*, 85 A.3d at 1087; *see also James v. Teleflex, Inc.*, No. CIV. A. 97-1206, 1999 U.S. Dist. LEXIS 1961, at *9 (E.D. Pa. Feb. 24, 1999) (setting forth equivalent standard in federal court).  Mylan has easily satisfied all three elements of this test.

*First*, as set forth in the Miner Declaration, K&E has represented Mylan in numerous former and current representations, and K&E's current representation of Teva is directly adverse to the interests of Mylan.  In fact, K&E effectively conceded this when it suddenly and without warning purported to withdraw from representing Mylan in matters relating to EpiPen®, despite just days earlier participating in conference calls and reviewing confidential Mylan information. Though Mylan questioned K&E at the time concerning what can only be described as its highly suspicious purported withdrawal, K&E would not provide details as to the supposed conflict, leaving Mylan to try and connect the dots.  *Second*, as set forth in detail in Section II.A, *see supra* pp. 4-5, K&E was entrusted with highly confidential, privileged and proprietary information crossing a broad spectrum of Mylan's business during the course of its representation.  *Third*, the matters in which K&E represented Mylan are substantially related to K&E's current representation of Teva.  The question of whether two matters are "substantially related" involves an analysis of the nature and scope of the prior representation, the nature and scope of the current representation, and whether the former client "might have disclosed confidences to his attorney which could be relevant and detrimental to the [former] client in the current action." *Greenwood Land Co. v. Omnicare, Inc.*, No. CIV. A. 09-686, 2009 U.S. Dist. LEXIS 74374, at *14-15 (W.D. Pa. Aug. 20, 2009).  Here, as discussed in Section II.A, *see*

*supra* pp. 5-6, the representation of Teva squarely implicates the precise disclosures that Mylan made to K&E during its extensive and long-standing representation, and is consequently impermissible.

In *Dougherty*, the Pennsylvania Superior Court granted a motion to disqualify on similar facts. In that case, the plaintiff sued defendant newspapers for defamation on the basis of articles in which the defendants alluded to the plaintiff's involvement in a federal criminal corruption investigation. 85 A.3d at 1088. Defendants retained Pepper Hamilton as counsel, the same law firm which had represented plaintiff in connection with a grand jury subpoena from the federal investigation. Pepper Hamilton confirmed that it would explore the subject of the federal investigation as part of its defense in the litigation – a matter with which it was intimately familiar, as it had previously been privy to confidential communications with plaintiff, advised plaintiff on what documents to submit in response to the subpoena, and acted as plaintiff's advocate during a search of plaintiff's home. *Id.* at 1087-88. Consequently, the court found that the two matters were substantially related and granted plaintiff's motion to disqualify under Rule 1.9. *Id.* at 1088-89. Indeed, the court noted that "[i]f the attorney might have acquired confidential information related to the subsequent representation, Pennsylvania Rule of Professional Conduct 1.9 would prevent the attorney from representing the second client." *Id.* at 1087-89 (quoting *Estate of Pew*, 655 A.2d 521, 545 (Pa. Super. Ct. 1994)).

*Greenwood* further emphasizes the propriety of disqualifying a law firm when information from a prior representation is substantially related to the current representation. 2009 U.S. Dist. LEXIS 74374, at *19-20. In *Greenwood*, plaintiff sued defendants for failure to provide timely notice of intent to vacate and subsequent breach of a commercial lease. *Id.* at *3-4. Defendants retained the law firm of Buchanan Ingersoll & Rooney, who had previously

advised plaintiff on construction of the lease terms and strategies related to enforcing the lease. *Id*. at *19-20. Though the court recognized that "there is not a precise identity of issues in the [previous] and the current matter," both matters involved the same common denominators of a single lease, the corporate identity of the tenant, construction of the lease terms and the failure to comply with those terms. *Id*. at *18-19. Because "information communicated to [Buchanan Ingersoll] by [plaintiff] in [the former representation] could prove valuable to the Defendants in formulating their own position," disqualification was warranted. *Id*. at *19-21 (noting also that disqualification was appropriate because the matter could be handled by "any number of knowledgeable and experienced attorneys"); *see also Imbesi*, 2001 U.S. Dist. LEXIS 17689, at *8-9 (granting motion to disqualify law firm where it had represented defendants in the past in "many of the matters which form portions of the Complaint"). These cases make clear that K&E's representation of Teva must immediately cease. K&E has acquired intimate knowledge of Mylan's business – knowledge that is of obvious relevance to Teva's efforts to acquire Mylan. Under these circumstances, Pa.R.P.C. 1.9 requires that K&E be disqualified from further representing Teva.

### III.    THE INJUNCTION IS NECESSARY TO PREVENT IMMEDIATE AND IRREPARABLE HARM TO MYLAN.

A fundamental purpose of a preliminary injunction is "the avoidance of irreparable injury or gross injustice until the legality of the challenged action can be determined." *W. Penn*, 737 A.2d at 299 (internal marks and citation omitted). An injury is deemed "irreparable" if "it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard." *Id.* "In the commercial context, the impending loss of a business opportunity or market advantage may aptly be characterized as an 'irreparable injury'" for purposes of equitable relief. *Sovereign Bank v. Harper*, 674 A.2d 1085, 1093 (Pa. Super. Ct. 1996).

Pennsylvania courts have repeatedly held that the potential disclosure of information disclosed in the course of the attorney-client relationship constitutes irreparable harm that clearly justifies emergency relief, particularly where that information might be divulged to business competitors. For example, in *Maritrans*, *supra*, the Pennsylvania Supreme Court reinstated a preliminary injunction restraining Pepper Hamilton from representing competitors of plaintiff, a former client of the firm. 529 Pa. 241. Since Pepper Hamilton had extensive knowledge of the plaintiff's sensitive business information, "Maritrans' competitive position could be irreparably injured if [Pepper Hamilton] continued to represent their competitors[.]" *Id.* at 260-61. The Supreme Court also explained that if confidential information was revealed, "Maritrans' remedy at law, that is their right to later seek damages, would be difficult if not impossible to sustain because of difficult problems of proof, particularly problems related to piercing what would later become a confidential relationship between their competitors and those competitors' attorneys [Pepper Hamilton]." *Id.* at 261. Even if damages might later be obtained for a breach of fiduciary duty, "that remedy would be inadequate to correct the harm that could be prevented by injunctive relief, at least until the court could examine the case in greater detail." *Id.* The Supreme Court therefore affirmed the trial court's decision that "preliminary injunctive relief was necessary to abate an actionable wrong [and] to prevent further and continuing irreparable harm to Maritrans[.]" *Id.* at 263; *see also Hyman*, 964 F. Supp. at 173 (enjoining plaintiff's former in-house counsel from representing its competitor in certain matters; "[counsel] could divulge specific, valuable, confidential information learned while at Hyman, information that, if disclosed, could injure Hyman's economic health to the point of irreparable harm"); *Dougherty*, 85 A.3d at 1086 ("Dougherty has averred facts establishing a colorable claim of the potential

-13-

disclosure of attorney work product and breach of attorney-client privilege, which could result in irreparable harm.").

Here, there is no doubt that a preliminary injunction preventing K&E from representing Teva in its hostile takeover effort is "necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages[.]" *SEIU*, 104 A.3d at 501-02. As set forth above, K&E has been entrusted with wide-ranging access to Mylan's business, including aspects related to its commercial, legal and regulatory strategies, and its portfolio of current and future products. This very same information may be used by K&E to assist Teva in its attempted hostile takeover of Mylan, and could be disclosed (even inadvertently) at any time. *See Dougherty*, 85 A.3d at 1087 ("[T]he duty owed by an attorney to his or her client extends to members of the attorney's law firm[.]"); *Estate of Pew*, 655 A.2d at 545 ("Confidential information gained by one member of a law firm is imputable to other members of the same law firm."). K&E's extensive insight into Mylan's business, which it obtained as Mylan's trusted legal advisor, is just the sort of confidential information that Teva would like to know in its ongoing bid for Mylan. Any disclosure of Mylan's confidences to Teva therefore threatens to inflict a severe market disadvantage upon Mylan that is impossible to quantify or monetize, particularly given the hostile nature of Teva's actions and Teva's status as one of Mylan's chief competitors in the pharmaceutical industry. This is exactly the type of "irreparable harm" that preliminary injunctions are designed to prevent.

## IV.   THE BALANCE OF THE EQUITIES FAVORS AN INJUNCTION.

There can be no serious dispute that "greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm" K&E. *SEIU*, 104 A.3d at 501-02. As described above, the denial of a preliminary injunction risks severe, imminent, and irreparable harm through the disclosure of

-14-

Mylan's most confidential and sensitive business information to Teva – a chief competitor and hostile bidder. Any disclosure of such information could inflict incalculable injury upon Mylan's position in the market and in these critical negotiations.

By contrast, K&E stands to suffer little (if any) harm if it is enjoined from representing Teva in its hostile takeover attempt. At worst, K&E would lose the opportunity to earn legal fees from its representation of Teva – hardly a compelling circumstance in light of the substantial fees paid to K&E by Mylan. *See* Miner Decl. at ¶ 21. And even if the Teva fees might be substantial for K&E, the relevant question in assessing this factor "is whether, and to what extent[,] . . . the defendants will suffer *irreparable* harm if the preliminary injunction is issued." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004) (emphasis added) (internal marks and citation omitted). K&E's lost business income, however substantial, would be fully compensable by money damages and therefore cannot constitute irreparable harm as a matter of law. *See Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt. Ltd.*, 456 Fed. Appx. 184, 188-89 (3d Cir. 2012) ("[Defendant] argues that it would suffer irreparable harm because the injunction would deprive it of business income derived from its longtime clients . . . . However, '[w]e have long held that an injury measured in solely monetary terms cannot constitute irreparable harm.'") (citation omitted).

Moreover, any harm suffered by K&E is of its own making. K&E made the affirmative decision to take on the representation of Teva, and chose to do so without seeking Mylan's consent. In fact, K&E's representation of Teva in a matter directly adverse to Mylan came as a complete shock. In stark contrast to K&E's inexplicable yet deliberate conduct, Mylan now has been forced into a situation where it must protect itself from its own counsel. A preliminary

injunction therefore presents no threat to K&E's ongoing business, but the denial of an injunction certainly threatens irreparable harm to Mylan.

## V. THE INJUNCTION WILL PROPERLY RESTORE THE PARTIES TO THEIR STATUS AS IT EXISTED PRIOR TO K&E'S BREACH OF FIDUCIARY DUTY.

Under Pennsylvania law, a preliminary injunction "must address the status quo as it existed between the parties before the event that gave rise to the lawsuit, not to the situation as it existed after the alleged wrongful act but before entry of the injunction." *SEIU*, 104 A.3d at 509 (internal marks and citation omitted). The injunction that Mylan seeks would serve precisely that purpose – to return the parties to the *ex ante* status quo whereby K&E would not be in a position of conflicted loyalties. Such an injunction is clearly permissible in purpose and effect. *See, e.g.*, *Maritrans*, 529 Pa. at 260-61; *Hyman*, 964 F. Supp. at 175.

## VI. THE INJUNCTION IS REASONABLY SUITED TO REMEDY THE HARM TO MYLAN.

A preliminary injunction must also be "reasonably suited to abate the offending activity." *SEIU*, 104 A.3d at 502. As in *Maritrans*, the danger of a violation of Mylan's confidential relationship with K&E is too great to be prevented by an injunction that merely restrains the firm from revealing the confidential information it has acquired. An injunction barring K&E from representing Teva as an adverse client is therefore a reasonable remedy. *See Maritrans*, 529 Pa. at 260 (also noting that merely enjoining the disclosure of confidences would be "difficult, if not impossible, to administer"). To that end, the conflict created by K&E's simultaneous representation of adverse clients is so severe that it cannot be remedied by a screen or "Chinese Wall," and under these circumstances the injunction sought is entirely proper in scope. *See Dougherty*, 85 A.3d at 1094-95 (Donohue, J., concurring) (finding that Pepper Hamilton's use of an ethical screen was "irrelevant" because screening only overcomes conflicts of interest "created by a new lawyer to the firm who brings the conflict with him as a result of his prior

-16-

employment"); *Allman*, 1988 U.S. Dist. LEXIS 11659, at *12-13(finding that "[t]o permit a law

firm to simultaneously represent adverse parties . . . would clearly run afoul of [The Rules of

Professional Conduct]," despite the alleged existence of a Chinese Wall); *also Int'l*

*Longshoremen's Ass'n, Local Union 1332 v. Int'l Longshoremen's Ass'n*, 909 F. Supp. 287, 293

(E.D. Pa. 1995) (disqualifying attorneys at late stage in proceedings where the "conflicts of

interest [were] simply too severe to allow [lawyers] to remain on the case, despite counsel's

assurances that the conflicts will in no way interfere with their professional judgment").

## VII.   THE INJUNCTION WILL NOT ADVERSELY AFFECT THE PUBLIC INTEREST.

Finally, the Pennsylvania Supreme Court has observed that the purpose of the attorney-

client privilege "'is to encourage full and frank communication between attorneys and their

clients and thereby promote broader public interests in the observance of law and administration

of justice.'" *Dougherty*, 85 A.3d at 1087 (quoting *Levy*, 65 A.3d at 368). Enjoining K&E from

violating its ethical duties to Mylan will not adversely affect the public interest. To the contrary,

it will strengthen and restore public trust in the attorney-client relationship. *See Hyman*, 964 F.

Supp. at 175. As the Pennsylvania Supreme Court observed in *Maritrans*:

> The public's trust in the legal profession undoubtedly would be undermined if this
> Court does not . . . recognize the common law foundation for the principle that an
> attorney's representation of a subsequent client whose interests are materially
> adverse to a former client in a matter substantially related to matters in which he
> represented the former client constitutes an impermissible conflict of interest
> actionable at law.

529 Pa. at 252.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for a preliminary injunction should be

granted.

-17-

Dated:  May 1, 2015                           Respectfully submitted,

                                              _____
                                              ROGER J. ECKER, ESQ.
                                                  PA. ID. NO. 05446
                                              PEACOCK KELLER & ECKER, LLP
                                              70 East Beau Street
                                              Washington, PA 15301
                                              Tel.:  724-222-4520
                                              Fax:  724-222-3318
                                              REcker@PeacockKeller.com

                                              WILLIAM PIETRAGALLO, II, ESQ.
                                                  PA. ID. NO. 16413
                                              JOHN A. SCHWAB, ESQ.
                                                  PA. ID. NO. 89596.
                                              PIETRAGALLO GORDON ALFANO BOSICK &
                                              RASPANTI, LLP
                                              One Oxford Centre, 38th Floor
                                              Pittsburgh, PA 15219
                                              Tel.:  412-263-2000
                                              Fax:  412-263-2001
                                              WP@Pietragallo.com
                                              JAS@Pietragallo.com

                                              MICHAEL S. SOMMER, ESQ.
                                                  N.Y. ID. NO. 2182939
                                              WILSON SONSINI GOODRICH & ROSATI, P.C.
                                              1301 Avenue of the Americas, 40th Floor
                                              New York, NY 10019
                                              Tel.:  212-999-5800
                                              Fax:  212-999-5899
                                              msommer@wsgr.com

-18-

CERTIFICATE OF SERVICE

I, Roger J. Ecker,  Esquire, do hereby certify that a true and correct copy of the foregoing

Memorandum of Law is being served upon the following Defendant by personal service, U.S.

Certified Mail, Saturday delivery,  this 1 day of May, 2015.

Kirkland and Ellis LLP
300 North LaSalle
Chicago, IL   60654

Respectfully Submitted,

**PEACOCK KELLER & ECKER, LLP**

By:  _____

Roger J. Ecker, Esquire