IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYLAN INC., MYLAN PHARMACEUTICALS, INC., MYLAN TECHNOLOGIES, INC. and MYLAN SPECIALTY, LP,<br><br>                Plaintiffs,<br><br>   v.<br><br>KIRKLAND & ELLIS LLP,<br><br>               Defendant. | Civil Action No. 2:15-cv-00581-JFC-LPL |

**DEFENDANT KIRKLAND & ELLIS LLP'S MEMORANDUM OF LAW
IN RESPONSE TO PLAINTIFFS MYLAN, INC., MYLAN PHARMACEUTICALS INC.,
AND MYLAN SPECIALTY LP'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

I.     OVERVIEW .................................................................................................. 1

II.    FACTUAL BACKGROUND ........................................................................ 4

       A.     The Mylan Indirect Subsidiaries Retain Kirkland ................................ 4

       B.     Kirkland's Limited Representation Of Certain Mylan Indirect
              Subsidiaries. ........................................................................................ 6

       C.     Kirkland Continues To Represent Teva In Matters Adverse To Mylan. ................. 9

       D.     Kirkland Considers, Then Declines, A New Representation Proposed By
              Mylan Inc. ........................................................................................... 9

       E.     Outside Counsel For The Mylan Indirect Subsidiaries Demands
              Information. ........................................................................................ 11

       F.     In April 2015, Teva Engages Kirkland With Respect To The Proposed
              Transaction. ........................................................................................ 11

       G.     Breaching Their Promise, The Mylan Indirect Subsidiaries Move To
              Disqualify Kirkland. .......................................................................... 13

III.   ARGUMENT ............................................................................................... 13

       A.     Applicable Legal Standard.................................................................. 13

       B.     Plaintiffs Completely Ignore Their Undisputedly Valid Conflict Waiver............ 14

       C.     Mylan N.V. Has Never Been A Client of Kirkland; Kirkland Owes It No
              Fiduciary Duties; And The Teva/Mylan N.V. Transaction Presents No
              Adversity To The Mylan Indirect Subsidiaries.................................... 17

       D.     Kirkland's Representation Of Teva Is Not "Related To The Legal
              Services" Kirkland Provided................................................................ 23

              1.     Confidentiality Is Not Relevant To Defining Relatedness Under
                     The Clear Terms Of The Engagement Agreement. ................... 24

              2.     Even If The Possibility Of Overlapping Confidences Were
                     Relevant To Determining Relatedness Here, Kirkland's Work For
                     Plaintiffs Is Not Related To The Teva/Mylan N.V. Transaction............. 30

       E.     Plaintiffs Have Failed To Establish Irreparable Harm, That The Balance
              Of The Hardships Tips In Their Favor, Or That An Injunction Is In The
              Public Interest. ................................................................................... 33

**TABLE OF CONTENTS**
**(continued)**

Page

1. Plaintiffs Have Failed To Establish Irreparable Harm................................. 33

2. Plaintiffs Have Failed To Establish That The Hardships Tip In Their Favor.......................................................................................... 35

3. Plaintiffs Have Failed to Establish That An Injunction Is In The Public Interest. ..................................................................................... 37

IV.   CONCLUSION............................................................................................ 38

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*Alcan Int'l Ltd. v. S.A. Day Manufacturing Co.*,
    176 F.R.D. 75 (W.D.N.Y. 1996)...................................................................................... 20

*Allegheny Energy, Inc. v DQE, Inc.*,
    171 F.3d 153 (3d Cir. 1999) .......................................................................................... 40

*Boston Scientific Corp. v. Johnson & Johnson Inc.*,
    647 F. Supp. 2d 369 (D. Del. 2009).............................................................................. 35

*Brooklyn Navy Yard Cogeneration Partners, L.P. v. PMNC*,
    663 N.Y.S.2d 499 (N.Y. Sup. Ct. 1997).......................................................................... 20

*Buschmeier v. G&G Invs., Inc.*,
    2007 WL 4150408 (W.D. Pa. Nov. 19, 2007) ................................................................. 14

*CenTra, Inc. v. Estrin*,
    639 F. Supp. 2d 790 (E.D. Mich. 2009).................................................................... 36, 39

*Certain Underwriters at Lloyd's v. Sidley Austin LLP*,
    2012 WL 8017009 (Mass. Sup. Ct. Mar. 6, 2012) ................................................... 35

*Continental Grp. v. Amoco Chemicals Corp.*,
    614 F.2d 351 (3d Cir. 1980) .......................................................................................... 36

*Dougherty v. Philadelphia Newspapers, LLC*,
    85 A.3d 1082 (Pa. Super. Ct. 2014).............................................................................. 37

*Dunkin' Donuts Franchised Rests. LLC v. Mehta*,
    2007 WL 2688710 (W.D. Pa. Sept. 11, 2007)................................................................ 13

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006)....................................................................................................... 40

*Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*,
    142 F. Supp. 2d 579 (D. Del. 2001)......................................................................... 16, 35

*End of the Roads Tr. v. Terex Corp.*,
    2002 WL 242464 (D. Del. Feb. 20, 2002)..................................................................... 35

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*,
    765 F.3d 205 (3d Cir. 2014) ............................................................................... 13, 14, 35

*Fisons Corp. v. Atochem N. Am., Inc.*,
    1990 WL 180551 (S.D.N.Y. Nov. 14, 1990).................................................................. 16

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Galderma Labs. L.P. v. Actavis Mid Atlantic LLC*,
   927 F. Supp. 2d 390 (N.D. Tex. 2013) ................................................................ 15, 16

*General Cigar Holdings, Inc. v. Altadis, S.A.*,
   144 F. Supp. 2d 1334 (S.D. Fla. 2001) .................................................................. 16

*GEO Specialty Chem., Inc. v. Husisian*,
   923 F. Supp. 2d 143 (D.D.C. 2013) ....................................................................... 36

*Guerrero v. Bluebeard's Castle Hotel Inc.*,
   982 F. Supp. 343 (D. V.I. 1997) ............................................................................ 19

*HLP Props., LLC v. Con. Edison Co. of N.Y.*,
   2014 WL 5285926 (S.D.N.Y. Oct. 16, 2014) ....................................................... 20

*Hohe v. Casey*,
   868 F.2d 69 (3d Cir. 1989) .................................................................................... 35

*Jackson v. Rohm & Haas Co.*,
   366 F. App'x. 342 (3d Cir. 2010) .......................................................................... 14

*Kaleta v. Clausi*,
   2013 WL 1804203 (M.D. Pa. Apr. 29, 2013) .................................................. 31, 37

*Lesko v. Frankford Hosp.-Bucks Cty.*, 15 A.3d 337 (Pa. 2011) .................................. 34

*Macy's, Inc. v. J.C. Penny Corp.*,
   968 N.Y.S.2d 64 (N.Y. App. Div. 2013) ............................................................... 16

*Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*,
   529 Pa. 241 (Pa. 1992) .......................................................................................... 37

*Marxe v. Jackson*,
   833 F.2d 1121 (3d Cir. 1987) ................................................................................ 38

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ............................................................................................... 13

*NutraSweet Co. v. Vit-Mar Enters.*,
   176 F.3d 151 (3d Cir. 1999) .................................................................................. 13

*Pacemaker Yacht Co., Etc. v. NLRB*,
   663 F.2d 455 (3d Cir. 1981) .................................................................................. 34

*Pike v. L'Nard Assocs., Inc.*,
   1992 WL 365492 (E.D. Pa. Dec. 1, 1992) ............................................................ 27

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Punnett v. Carter*,
   621 F.2d 578 (3d Cir. 1980) ................................................................. 14, 38

*Reis v. Barley, Snyder, Senft & Cohen LLC*,
   2012 WL 2422794 (E.D. Pa. June 27, 2012) ........................................... 19

*Sauer Inc. v. Honeywell Bldg. Solutions SES Corp.*,
   2012 WL 364050 (W.D. Pa. Feb. 2, 2012) .............................................. 14

*Standard Ret. Sys., Inc. v. Ky. Bancshares, Inc.*,
   2014 WL 4783016 (E.D. Ky. Sept. 24, 2014) .......................................... 20

*The Hyman Companies, Inc. v. Brozost*,
   964 F. Supp. 168 (E.D. Pa. 1997) ........................................................... 38

*Treferlner v. Burrell Sch. Dist.*,
   655 F. Supp. 2d 581 (W.D. Pa. 2009) ...................................................... 40

*TSC Indus. v. Northway, Inc.*,
   426 U.S. 438 (1976) ................................................................................... 8

*United States v. Spectro Foods Corp.*,
   544 F.2d 1175 (3d Cir. 1976) .................................................................. 14

*Winter v. Natural Res. Defense Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................... 35, 38, 40

*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) ................................................................ 37

## Other Authorities

1 FLETCHER CYC. CORP. § 29 (2015) ................................................... 22, 23

6A FLETCHER CYC. CORP. § 2821 (2014) ................................................ 22

ABA Formal Ethics Op. 05-436 (2005) ..................................................... 16

ABA Standing Comm. on Ethics & Prof'l Resp., Formal Op. 05-434 (2004) ............................. 24

Formal Op. 2006-1, the N.Y.C. Bar Ass'n Comm. on Prof'l & Jud'l Ethics (2006) .................. 16

Formal Op. Number 1989-115, Cal. State Bar Standing Comm. on Prof'l Resp. & Conduct
   (1989)...................................................................................................... 16

## TABLE OF AUTHORITIES
### (continued)

Page(s)

Jonathan J. Lerner, *Honoring Choice by Consenting Adults: Prospective Conflict Waivers as a Mature Solution to Ethical Gamesmanship—A Response to Mr. Fox*, 29 HOFSTRA L. REV. 971 (Summer 2001) ................................................................................. 16

N.Y.C. Bar Ass'n Comm. on Prof'l & Jud'l Ethics, Formal Op. 2007-3 ..................................... 19

Pa. Bar. Ass'n Op. on Legal Ethics & Prof'l Resp., Formal Op. 2006-200 (2006)..................... 16

Pa. Ethics Op. 2001-03 (Jan. 15, 2001) ..................................................................................... 20

Restatement (Third) of Law Governing Lawyers § 122, cmt. d (2000) ....................................... 16

RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS, § 122, cmt. c(i) (2000) ......................... 15

Richard W. Painter, *Advance Waiver of Conflicts*, 13 GEO. J. LEGAL ETHICS 289 (Winter 2000)................................................................................................................... 16

RPC 168, N.C. State Bar (1994)................................................................................................. 16

SEC Compliance & Disclosure Interpretation 250.01 (https://www.sec.gov/divisions/corpfin/guidance/exchangeactrules-interps.htm) .................. 21

### Rules

PA Rule of Professional Conduct 1.7 .......................................................................................... 12

PA Rule of Professional Conduct 1.9 ..................................................................................... 24, 28

## I.      OVERVIEW

There should be no illusion about what is really going on here.  A foreign company (Mylan N.V.), born out of a "tax inversion" transaction, wants to disrupt the efforts of another foreign company (Teva Pharmaceutical Industries Ltd. ("Teva")) to engage in a $42 billion foreign transaction.  The fact that Mylan N.V. undisputedly was never a client of Kirkland & Ellis LLP ("Kirkland") forecloses that tactic.  Undeterred though, the strategy instead appears to be to cause a few of Mylan N.V.'s 140 "indirect subsidiaries"—i.e., U.S. companies two steps removed from the corporate parent —to attempt to deprive Teva of its long-standing transactional counsel, Kirkland, by claiming a conflict of interest.

There is no conflict arising from Teva's acquisition of Mylan N.V. stock where Kirkland never represented Mylan N.V.—███████████████████████████████████████ ██████████████████████████.  Moreover, the proposition that Kirkland's work regarding Teva's purchase of Mylan N.V.'s shares at a premium somehow is adverse to Mylan N.V.'s indirect subsidiaries is preposterous, as myriad cases, the expert opinion of Professor Richard Painter, and common sense confirm.  For this reason alone, the motion can be denied.

███████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████

░░░░░███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████

Plaintiffs' entire argument is nothing more than this:  they provided some of their allegedly confidential information to Kirkland in connection with a few matters the firm was asked to handle, and Kirkland's possession of that information requires disqualification.  Not only do Plaintiffs grossly mischaracterize both the information and the matters that they trumpet, but even more fundamentally, ████████████████████████████████████ ████████████████████████████████████████

Plaintiffs' only conceivable claim, therefore, is that Kirkland actually disclosed confidential information, ████████████████████████.  But Plaintiffs do not even make that argument—and rightly so.  The undisputed evidence from Kirkland's General Counsel and every relevant Kirkland lawyer is that Kirkland scrupulously maintained that confidentiality with an elaborate ethical wall and periodic reminders.

That leaves Plaintiffs with neither a relevant argument nor relevant (and certainly not admissible) evidence.  All they have is their casual and conclusory comment that the

transactional work by Kirkland's David Fox regarding Teva's proposal to Mylan N.V. is related to the modest litigation and FDA regulatory work by Kirkland's Jay Lefkowitz and Michael Shumsky for certain "indirect subsidiaries" of Mylan N.V.  Under the facts of this case, that suggestion is wrong for several reasons:  (1) Kirkland has never done any corporate or transactional work for any Mylan entity, nor spoken with any member of their Board or senior executive management; (2) Plaintiffs' fundamentally misapprehend Mr. Fox's team's work for Teva, which is completely unrelated to Mr. Shumsky's specific product-related litigation and FDA regulatory matters; (3) nowhere do Plaintiffs actually prove that the work was "related;" and (4) Plaintiffs' notion of relatedness does nothing more than bootstrap the notion of Kirkland's alleged possession of confidential information— ███████████████████████ ████████████████████████████

The tactical foundation of this entire exercise, which the Third Circuit has warned courts to guard against with vigilance, threatens irreparable harm to Teva's ability simply to permit Mylan N.V. shareholders to decide if they want to receive a premium for their stock.  It is an unwarranted attack on the integrity and reputation of real people at Kirkland.  Moreover, Plaintiffs' argument suffers from a lack of evidence here too, because the cases that Plaintiffs failed to cite confirm that the potential for harm is insufficient for an injunction, even if a conflict has been shown.  There must be proof that confidential information actually will or has been disclosed.  For these multiple and independent reasons, Kirkland respectfully requests that this motion be denied.

## II.   FACTUAL BACKGROUND

**A.   The Mylan Indirect Subsidiaries Retain Kirkland**

For years, Kirkland has represented Teva, including in litigation directly adverse to some of these Plaintiffs.  Declaration of Michael Shumsky ("Shumsky Decl.") ¶¶ 9–22; *see also* Ex. A attached hereto.  Notwithstanding that fact, Mylan Inc.'s in-house counsel in late 2012 discussed with Kirkland litigation partners Jay Lefkowitz and Michael Shumsky ███████████

████████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

---

¹  Mr. Lefkowitz has served as an advisor to the President of the United States in two different administrations and as the U.S. Envoy to North Korea on Human Rights.  Lefkowitz Decl., ¶ 1.  He also teaches a course in U.S. Supreme Court advocacy at Columbia Law School.  *Id.*

 Consistent with that understanding and without any objection from any of the specified Mylan entities, Kirkland subsequently represented Teva in

litigation adverse to Mylan Pharmaceuticals regarding different products.  Lefkowitz Decl. ¶ 17, Ex. 2.

**B.     Kirkland's Limited Representation Of Certain Mylan Indirect Subsidiaries.**



████████████████████████████████████████████████

████████████████████████████████████████, which never specifically

mentioned them in its SEC filings (except in a generic catch-all section on litigation and

regulatory proceedings that Mylan Inc. itself said publicly were immaterial to Mylan Inc.'s value

or financial results).[2]  In fact, officers of Mylan Inc. attested to the accuracy of that non-

materiality statement as part of the discharge of their Sarbanes-Oxley affirmation duties

associated with the publication of those SEC filings.[3]  ████████████████████████████

██████████████  Moreover, because the legal services often involved public proceedings,

almost of all it is now publicly available, outdated, or immaterial.  Shumsky Decl. ¶¶ 30–32, 34,

35, 39, 41, 43.

---

[2]   *See* Declaration of Audrey K. Tan ("Tan Decl.") Ex. A (Mylan Inc. 2013 Annual Report on
      Form 10-K), at 3–14; Ex. B (Mylan Inc. 2014 Annual Report on Form 10-K), at 4–12.

[3]   Tan Decl. Ex. F (Mylan Inc. 2013 Annual Report on Form 10-K Certification); Ex. G (Mylan
      Inc. 2014 Annual Report Form on 10-K Certification).



**C.      Kirkland Continues To Represent Teva In Matters Adverse To Mylan.**

Consistent with past practice and the Engagement Agreement, Kirkland continued to represent Teva and other companies in matters adverse to certain of the Mylan Indirect Subsidiaries, including high-profile litigation before the Federal Circuit, the Fourth Circuit, and the Supreme Court.  Shumsky Decl. ¶¶ 9–22. ███████████████████████

████████████████████████████████

█████████████████████████████████████

███

█  ███████████████████████████████████

      ████████████████████████

█████████████████████████████

███████████████████████████████

███████████████████████████

████████████████████████████████████

█████████████████████████████

████████████████████████

      █████████████████████████

███████████████████████████████████

████████████████████████████████

████████████████████████████

██████████████████████████████████

█████████████████████





**F.      In April 2015, Teva Engages Kirkland With Respect To The Proposed Transaction.**

In early April 2015, roughly *four months after* Mr. Lefkowitz was forced to decline the

representation discussed above, a senior executive at Teva asked David Fox, a corporate partner

in Kirkland's New York office, to represent Teva in connection with the proposed acquisition of

Mylan, N.V.  Declaration of David Fox ("Fox Decl.") ¶ 15; Declaration of Thomas O. Kuhns

("Kuhns Decl.") ¶ 4.  Mr. Fox had a longstanding relationship with Teva and was trusted by its senior executives, having previously represented Teva regarding a number of complex mergers and acquisitions.  Fox Decl. ¶ 4; Declaration of Eyal Desheh ("Desheh Decl.") ¶¶ 12–13.

Following Kirkland's standard conflict check procedures, the firm's General Counsel, Thomas Kuhns, confirmed that Mylan, N.V. was not, and had never been, a client.  Kuhns Decl. ¶ 4; Fox Decl. ¶ 16.  Kirkland also confirmed that its Engagement Agreement was limited to the specified Mylan entities, ███████████████████████████  Kuhns Decl. ¶ 5.  In addition, Mr. Kuhns instituted an ethical wall between any attorneys who would work on the proposed transaction for Teva and any attorneys who had worked on matters for the Mylan Indirect Subsidiaries.  Kuhns Decl. ¶¶ 6–11; Fox Decl. ¶¶ 19-20.  Kirkland used the software program, "Wallbuilder," which prevents any attorney working on the proposed transaction for Teva from gaining access to, or knowledge of, any electronic files, documents or materials relating to the matters for any of the Mylan entities.  Kuhns Decl. ¶ 7.  Finally, Kirkland circulated a screening memo to all attorneys and staff in both groups instructing them not to discuss their work with members of the other group.  Kuhns Decl. ¶ 8.

As a result, no attorney working on the proposed transaction for Teva has had any access to or gained knowledge of any files, documents or other materials relating to any Mylan entity.  Kuhns Decl. ¶ 10.  Mr. Kuhns personally confirmed with each lawyer working in each group that nobody has seen, reviewed, or been exposed to any confidential, non-public materials or information that are accessible to members of the other group.  Kuhns Decl. ¶ 11.

G.    **Breaching Their Promise, The Mylan Indirect Subsidiaries Move To Disqualify Kirkland.**

On May 1, 2015, Plaintiffs filed suit against Kirkland.  In so doing, consistent with the tactical nature of this lawsuit at the behest of Mylan N.V., Plaintiffs alerted the Wall Street Journal about this case before notifying or serving Kirkland.  Kuhns Decl. ¶ 15.

### III.    ARGUMENT

A.    **Applicable Legal Standard.**

Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances."[5]  It is Plaintiffs' burden to prove (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable injury in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.[6]  Plaintiffs must establish *all* four factors; their failure to establish even one "renders a preliminary injunction inappropriate."[7]

Plaintiffs' bear a particularly heavy burden because they are seeking a mandatory injunction that would alter—not preserve—the status quo.[8]  Instead, it would provide

---

[5]    *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citation omitted); *see also Dunkin' Donuts Franchised Rests. LLC v. Mehta*, 2007 WL 2688710, at *8 (W.D. Pa. Sept. 11, 2007) ("'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

[6]    *Ferring Pharm.*, 765 F.3d at 210.

[7]    *NutraSweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999); *Ferring Pharm.*, 765 F.3d at 210.

[8]    *Ferring Pharm.*, 765 F.3d at 219 n.13 (citation omitted); *see also Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980) ("[T]he preliminary injunction sought here would not merely have preserved the status quo pendente lite but would have effectively granted plaintiffs substantial portions of the ultimate relief sought in this lawsuit."); *United States v. Spectro*
*(Cont'd on next page)*

13

substantially all of the relief as if Plaintiffs were successful after a full trial on the merits.

Plaintiffs' burden actually is even heavier because effectively they are seeking disqualification.

"Disqualification is a harsh measure which is generally disfavored by courts, and courts have an

obligation to prevent parties from using disqualification motions for tactical purposes."[9]

Plaintiffs thus must "clearly show that continued representation by opposing counsel would be

impermissible."[10]   In this regard, "conclusory allegations, which are not backed by evidence, do

not warrant the extreme remedy of attorney disqualification."[11]

**B.**



Nor could

they.  As PA Rule of Professional Conduct 1.7, comment 22 provides, such waivers are

enforceable against parties where, ▮▮▮▮, they are an "experienced user of the legal services"

*(Cont'd from previous page)*

    *Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976) ("The power to issue a preliminary
    injunction, especially a mandatory one, should be sparingly exercised.").

  [9]  *Sauer Inc. v. Honeywell Bldg. Solutions SES Corp.*, 2012 WL 364050, at *2 (W.D. Pa.
    Feb. 2, 2012).

[10]  *Sauer*, 2012 WL 364050, at *2; *see also Buschmeier v. G&G Invs., Inc.*, 2007 WL 4150408,
    at *5 (W.D. Pa. Nov. 19, 2007) (same).

[11]  *Jackson v. Rohm & Haas Co.*, 366 F. App'x. 342, 347 (3d Cir. 2010); *see also Buschmeier*,
    2007 WL 4150408, at *5 ("[V]ague and unsupported allegations are not sufficient to meet
    [the standard for disqualification].").

and are represented by counsel (expressly including in-house counsel).[12]  This well-settled

principle has been endorsed by the Restatement,[13] the American Bar Association,[14] countless

other Bar associations,[15] scholars,[16] and myriad cases.[17]

     The specified Mylan entities plainly are experienced users of legal services, and they

were represented by counsel ██████████████████████ Lefkowitz Decl. ¶ 9.

They have employed some of the world's leading law firms to handle their transactional and

litigation work.[18]  Moreover, when they retained Kirkland in February 2013, Kirkland already

---

[12] "For the purposes of determining informed consent, the effect is the same whether that independent lawyer is inside the client's organization or is other, outside counsel." *Galderma Labs. L.P. v. Actavis Mid Atlantic LLC*, 927 F. Supp. 2d 390, 403 (N.D. Tex. 2013) (quoting RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS, § 122, cmt. c(i) (2000)).

[13] RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 122, cmt. d (2000).

[14] ABA Formal Ethics Op. 05-436 (2005) (cited with approval in Pa. Bar. Ass'n Op. on Legal Ethics & Prof'l Resp., Formal Op. 2006-200 (July 26, 2006) ("PA Formal Op. 2006-200")).

[15] *E.g.*, Formal Op. 2006-1, the N.Y.C. Bar Ass'n Comm. on Prof'l & Jud'l Ethics (2006) (cited with approval in PA Formal Opinion 2006-200); Formal Op. Number 1989-115, Cal. State Bar Standing Comm. on Prof'l Resp. & Conduct (1989); RPC 168, N.C. State Bar (1994).

[16] Painter Decl. ¶¶ 15–28; Jonathan J. Lerner, Honoring Choice by Consenting Adults: Prospective Conflict Waivers as a Mature Solution to Ethical Gamesmanship—A Response to Mr. Fox, 29 HOFSTRA L. REV. 971 (Summer 2001); Richard W. Painter, Advance Waiver of Conflicts, 13 GEO. J. LEGAL ETHICS 289 (Winter 2000).

[17] *E.g.*, *Galderma Labs.*, 927 F. Supp. 2d at 396–98; *Macy's, Inc. v. J.C. Penny Corp.*, 968 N.Y.S.2d 64, 65–66 (N.Y. App. Div. 2013); *General Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1338–39 (S.D. Fla. 2001); *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 582–83 (D. Del. 2001); *Fisons Corp. v. Atochem N. Am., Inc.*, 1990 WL 180551, at *4–5 (S.D.N.Y. Nov. 14, 1990).

[18] The firms include Alston & Bird LLP; Connell Foley LLP; Morgan, Lewis & Bockius LLP; Munger, Tolles & Olson LLP; Perkins Coie LLP; Steptoe & Johnson PLLC; and Venable LLP.  Tan Decl. ¶ 6, Ex. E.

represented their adversaries in ongoing litigation.  *See* Ex. A attached hereto; Shumsky Decl.

¶ 26; Lefkowitz Decl. ¶¶ 12, 17, Ex. 2.[19]

███████████████████████ Kirkland continued to represent clients adverse to

various Mylan entities.  Kirkland accepted six cases in which it fought those Mylan entities'

efforts to market generic versions of Paxil, Quartette, Celebrex, and Copaxone.[20]  *See* Ex. A

attached hereto. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████

---

[19]  *See Mylan Labs. Ltd. v. FDA*, 1:2012-CV-01637, (D.D.C. filed Oct. 2, 2012) (defending
Ranbaxy Laboratories against Mylan's challenge to the FDA's grant of 180-day exclusivity
to market generic Valsartan); *OSI Pharms. v. Mylan Pharms., Inc.*, Case No. 12-1431
(Fed. Cir. filed June 1, 2012) (defending OSI Pharmaceutical's patents on the cancer drug
Tarceva on appeal); *Mylan, Inc. v. SmithKline Beecham Corp.*, Case No. 12-01539, (3d Cir.
docketed Mar. 3, 2012) (representing appellant GlaxoSmithKline in a contract dispute
regarding GSK's licensing of generic Paxil).

[20]  *See Mylan Inc. v. SmithKline Beecham Corp.*, Case No. 14-3646, 15-1447 (3d Cir. docketed
Feb. 25, 2015) (representing appellant GlaxoSmithKline in a contract dispute regarding
GSK's licensing of generic Paxil); *Teva Women's Health, Inc. v. Family Care Ltd.,* Case
No. 1:2014-CV-09637 (S.D.N.Y. filed Dec. 5, 2014) (representing Teva Women's Health in
a patent infringement action against Mylan Pharmaceuticals and Mylan Inc. relating to their
generic version of Quartette); *Teva Women's Health, Inc. v. Famy Care Ltd.*, Case No
1:2014-CV-04981 (S.D.N.Y. filed July 2, 2014) (same); *Mylan Pharms., Inc. v. FDA*, Case
No. 14-1522, 14-1529, 14-1593 (4th Cir. docketed June 2, 2014) (representing Teva on
appeal from Mylan Pharmaceutical's challenge to FDA's denial of Mylan's right to market a
generic version of Celebrex); *Teva Pharms. Indus., Ltd. v. Sebelius*, Case No. 1:2014-CV-
00786 (D.D.C. filed May 9, 2014) (representing Teva in Teva's challenge to the FDA's
denial of a citizen petition to require clinical trials as a condition of approving putative
generic versions of Teva's MS treatment Copaxone); *Mylan Pharms. Inc. v. F.D.A.*, Case
No 1:2014-CV-00075 (N.D. W.Va. filed Apr. 25, 2014) (representing Teva against Mylan
Pharmaceutical's challenge to FDA's denial of right to market a generic version of
Celebrex).

**C.      Mylan N.V. Has Never Been A Client of Kirkland; Kirkland Owes It No Fiduciary Duties; And The Teva/Mylan N.V. Transaction Presents No Adversity To The Mylan Indirect Subsidiaries.**

Plaintiffs' motion should be summarily denied because:  (1) Kirkland has never represented Mylan N.V., and therefore any purported adversity to *Mylan N.V.* or its shareholders is irrelevant under both applicable law and the explicit terms of the Engagement Agreement; and (2) nothing about the proposed Teva/Mylan N.V. transaction is adverse to the *Mylan Indirect Subsidiaries.*  Without adversity to a Kirkland client, there is no conflict.  With no conflict, Plaintiffs have no basis for injunctive relief.



Because Kirkland never represented Mylan, N.V., Kirkland owes no fiduciary, contractual or ethical duties to Mylan, N.V.[21]  Painter Decl. ¶¶ 29–42.  Lawyers and clients have

---

[21]   *See, e.g., Reis v. Barley, Snyder, Senft & Cohen LLC*, 2012 WL 2422794, at *13–14 (E.D. Pa. June 27, 2012) (holding that because plaintiffs could not show that they had an attorney-

*(Cont'd on next page)*

every right to—and are encouraged to—specify which entities the lawyer will represent;[22] █████

████████████████████████.[23]  The Engagement Agreement is also fully consistent with

the well-settled principle that when a lawyer represents a corporation, it is the *organization* that

is the client, *not* its affiliates, constituents, or shareholders.[24]

---

*(Cont'd from previous page)*

    client relationship with the defendant, the defendant owed no fiduciary duties to plaintiffs);
*Guerrero v. Bluebeard's Castle Hotel Inc.*, 982 F. Supp. 343, 347 (D. V.I. 1997) ("Since no
attorney-client relationship existed between [] counsel and plaintiff, [] counsel owes no
continuing duty of loyalty to plaintiff.")

[22]  N.Y.C. Bar Ass'n Comm. on Prof'l & Jud'l Ethics, Formal Op. 2007-3 (recognizing that
counsel and sophisticated parties can define what entities constitute the client).

[23]



[24]  Pa. R. Prof'l Conduct 1.7 cmt. 34 ("A lawyer who represents a corporation or other
organization does not, by virtue of that representation, necessarily represent any constituent
or affiliated organization, such as parent or subsidiary."); Pa. Ethics Op. 2001-03 (Jan. 15,
2001) (law firm representing one subsidiary could be adverse to another subsidiary of the
same parent, noting that the subsidiaries and parent are all "distinct legal entities"); *HLP
Props., LLC v. Con. Edison Co. of N.Y.*, 2014 WL 5285926, at *5–7 (S.D.N.Y. Oct. 16,

*(Cont'd on next page)*

Plaintiffs impermissibly conflate the distinction between Mylan, N.V. and the Mylan Indirect Subsidiaries.  For example, after defining "Mylan" as the three indirect subsidiaries, Plaintiffs proceed to characterize Teva's proposal as seeking to acquire "Mylan."  Pls.' Br. at 1.  But Mylan N.V.—whose publicly traded shares Teva offered to purchase at a substantial premium—is a distinct entity from the Mylan Indirect Subsidiaries.  Painter Decl. ¶¶ 33–34, 37–42.  Mylan N.V. simply owns the stock of another company that in turn owns the stock of the Mylan Indirect Subsidiaries, among myriad other assets.

This distinction is important.  As Mylan N.V.'s SEC filings acknowledge, Mylan N.V. was created by combining Mylan Inc. and multiple foreign subsidiaries of Abbott Laboratories that another Mylan subsidiary acquired concurrently for $6.3 billion.[25]  That transaction brought to the newly-formed Mylan N.V. more than 100 specialty and branded generic pharmaceutical products from Abbott.[26]  It also brought certain tax benefits to Mylan N.V.

---

*(Cont'd from previous page)*

2014) (no actual conflict in representing parent on corporate matters and working against subsidiary on unrelated environmental matter; thus, disqualification was not warranted despite law firm not obtaining a waiver); *Standard Ret. Sys., Inc. v. Ky. Bancshares, Inc.,* 2014 WL 4783016, at *6 (E.D. Ky. Sept. 24, 2014) (firm could represent subsidiary and act as defense counsel to co-subsidiary where there was no showing of "specific evidence that privileged information relevant to [the current matter] was transmitted to [the law firm]"); *Brooklyn Navy Yard Cogeneration Partners, L.P. v. PMNC,* 663 N.Y.S.2d 499, 501–02 (N.Y. Sup. Ct. 1997) (law firm could represent both subsidiary and party adverse in litigation to that subsidiary's parent because "the legal work done for defendant's subsidiary was of a highly specialized nature and had absolutely nothing in common with the subject matter of the [case involving the parent]"); *Alcan Int'l Ltd. v. S.A. Day Manufacturing Co.,* 176 F.R.D. 75, 80–81 (W.D.N.Y. 1996) (firm could be adverse to subsidiary even though the firm was representing its parent in unrelated matters).

[25]  Tan Decl. Ex. C (Mylan N.V. Q1 2015 Form 10-Q), at 4.

[26]  Tan Decl. Ex. C (Mylan N.V. Q1 2015 Form 10-Q), at 4.  The fact that the SEC allowed Mylan N.V. to be treated, according to Plaintiffs, as the "successor to Mylan Inc. for financial reporting purposes," is irrelevant here.  *See* Painter Decl. ¶ 39 n.3 ("succession"
*(Cont'd on next page)*

The birth of Mylan N.V., *after* Kirkland was retained by specified Mylan entities, was one of the much-discussed "tax inversion" transactions that have received considerable public attention.  By creating a new foreign parent, headquartered in England, Mylan N.V. avoided paying certain substantial U.S. and state taxes.

What matters here is that the existing Mylan N.V. Dutch corporate structure and British headquarters yields enormous tax benefits to Mylan, N.V.  Yet Plaintiffs seek to ignore the very distinction that permits Mylan, N.V. to avoid paying certain substantial U.S. and state taxes to disqualify Kirkland in an attempt to frustrate Teva's offer to buy Mylan N.V. shares at a considerable premium.  They cannot do so.  Painter Decl. ¶¶ 35–36.  Mylan N.V. simply never has been a Kirkland client, and thus any argument about adversity to Mylan N.V. is irrelevant.[27]

Plaintiffs' conflated argument about parallel adversity to them—the Mylan Indirect Subsidiaries—based on adversity to Mylan N.V. is also wrong.  That is because, to establish "adversity," Plaintiffs must demonstrate with admissible evidence that Teva's acquisition of

---

*(Cont'd from previous page)*

status means Mylan N.V. "was exempt from certain registration requirements under the securities laws"); SEC Compliance * Disclosure Interpretation 250.01, *available at* https://www.sec.gov/divisions/corpfin/guidance/exchangeactrules-interps.htm ("Under Rule 12g-3, the securities by a holding company that acquires a company with a class of securities registered under Section 12(g) of the Exchange Act are automatically deemed to be registered under Section 12(g), whether or not a Form 8-K or 8-A has been filed with respect to such securities.  The rule serves to eliminate any possible gap in the application of Exchange Act protection to the security holders of the predecessor.").

[27]  "A holding company is a corporate body with a concentrated ownership of shares of stock in another company, by which it exercises control, supervision or influence over the policies and management of the company whose shares it holds. . . .  [A] holding company is generally held not to be doing or transacting business through its subsidiary where the separate corporate entities are maintained.  By the same token, the creation of a holding company does not affect the separate and continuing existence of the corporation whose shares it holds, nor is the situation altered simply because the shareholders, directors, and other officers of the two companies are identical."  6A FLETCHER CYC. CORP. § 2821 (2014).

Mylan N.V.'s publicly-traded stock is adverse to *them* as freestanding, independently owned U.S. corporations that happen to be owned by a Dutch company headquartered in England.[28] There is no such evidence.

The salient fact is that Teva's proposal to acquire Mylan N.V. stock *has no adverse effect on the interests of the Mylan Indirect Subsidiaries*.  Painter Decl. ¶¶ 43–49.  Even if the information Kirkland lawyers supposedly learned could (according to Plaintiffs) led Teva to make a higher bid for Mylan N.V. stock, that higher offer would not be adverse to any indirect subsidiary (or even Mylan N.V. itself).  Alternatively, if the information Kirkland lawyers supposedly learned could (according to Plaintiffs) led Teva to make a lower bid, even then, while a shareholder of Mylan N.V. might have cause to complain, neither Mylan N.V.'s shareholders nor Mylan N.V. is Kirkland's client.[29]  The lower price theoretically paid to Mylan N.V. shareholders would have no adverse impact on the Mylan Indirect Subsidiaries as distinct corporate entities.

Plaintiffs therefore are left to *imply,* without analysis or authority, that Teva's potential acquisition of the stock of their indirect parent corporation is adverse because the Mylan Indirect Subsidiaries have some undefined, unrecognized ephemeral interest in avoiding changes in the ownership of their indirect parent corporation.  There is no authority for that proposition.

---

[28]  "A subsidiary corporation is presumed to be a separate and distinct entity from its parent corporation.  This rule applies even where one corporation wholly owns another and even though the entities have identical officers and directors."  1 FLETCHER CYC. CORP. § 26 (2015) (citation omitted).

[29]  "One corporation is not liable on the other's contracts merely because they have the same shareholders.  Thus, a subsidiary has no inherent ownership of, nor inherent right to collect upon, an obligation that is owed solely to and owned solely by its parent."  FLETCHER CYC. CORP. § 29 (2015) (citation omitted).

Professor Painter, who discusses this issue in considerable detail in his Expert Report, offers the following analogy as an illustration:

> Assume that a lawyer is bringing a personal injury action on behalf of client A.  Assume further that the lawyer is also representing Client B who is seeking to convince the owners of a 1000-unit apartment complex to sell it to Client B.  The lawyer is then contacted by Client *A* who tells the lawyer that he lives in the apartment complex, strongly prefers that it remain under current ownership, and therefore strongly objects to the lawyer representing Client B on the ground that the lawyer is acting in a way adverse to him.  It is unthinkable to conclude that the lawyer is barred from representing B because of A's general preference about who owns the building—a preference that will not affect his legal rights or duties.[30]

Countless corporations have hundreds of subsidiaries, many of which employ legions of law firms.  Yet in Plaintiffs' paradigm, no law firm representing any of those subsidiaries may ever undertake transactional work relating to the purchase of all or part of a parent company's shares, even where, as here, there is a conflict waiver and the parent is not a client.  Painter Decl. ¶¶ 16–17.  There is absolutely no precedent for this proposition, which would wreak havoc on the legal profession acting in corporate transactions, as well as encourage tactical, opportunistic, and entirely speculative disqualification motions.

As PA Rule of Professional Conduct 1.7, comment 6, makes clear, "simultaneous representation in unrelated matters of clients whose interests are only economically adverse, such as representation of competing economic enterprises in unrelated litigation, does not ordinarily constitute a conflict of interest."  Plaintiffs have not proven Kirkland's work for Teva is adverse to the interests of the Mylan Indirect Subsidiaries.  Without that showing, there is no proof of a conflict.  Plaintiffs' motion therefore must be denied.

---

[30]  Painter Decl. ¶ 46.

**D.    Kirkland's Representation Of Teva Is Not "Related To The Legal Services" Kirkland Provided.**

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████

Plaintiffs' only "evidence" is their argument that Kirkland was privy to some information about their products that might be relevant to Teva's valuation of Mylan N.V.  This claim fails for two *independent* reasons.

*First*, ██████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████    That is precisely what Plaintiffs are seeking to do here based solely on some speculative and cryptically-described alleged confidences.  *Second*, Plaintiffs' claim—that Kirkland lawyers learned alleged confidences that would be of interest to Teva's analysis of its $42 billion offer—is based on wild

---

■ ████████████████████████████████████████████

conjecture inconsistent with Plaintiffs' evidentiary burden, the considerable evidence Kirkland has submitted, and with common sense.

1. 



 Absent a waiver, PA Rule of Professional Conduct 1.9, comment 3, states that matters can be deemed related if (1) they "involve the same transaction or legal dispute," or (2) if "there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."

███████████████████████████████ Matters are "related to" Kirkland's "legal services" if, and only if, the matters themselves involve the same transaction, dispute, or product.[33]

Plaintiffs do not even suggest that Mr. Shumsky's regulatory and associated litigation work, from a subject-matter perspective, is related to the transactional work Mr. Fox is providing to Teva.  Shumsky Decl. ¶ 24; Fox Decl. ¶ 25. ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████ The transactional work Mr. Fox is doing is fundamentally different.  Fox Decl. ¶ 25.  Even more to the point of refuting relatedness, Kirkland has never done any transactional work for the specified Mylan entities (Shumsky Decl. ¶ 24; Kuhns Decl. ¶ 4)—and certainly no legal services even remotely close to the complex, multi-jurisdictional, cross-border transactional work Kirkland is doing for Teva.  Fox Decl. ¶¶ 4, 22–23; Desheh Decl. ¶¶ 14–15.  Kirkland has provided Plaintiffs with no M&A services, no SEC compliance services, no financing services, no executive compensation services, no corporate governance services, no restructuring services, and no tax services.  Kuhns Decl. ¶ 4.  Kirkland has never done any work related to Plaintiffs' articles of incorporation, shareholder agreements, minutes of the Board of Directors, or filings with any State, federal, or foreign department of corporations or similar agency.  Kuhns Decl. ¶ 4.  And ███████████████████████████

███████████████████████████████████████████████████████

██████████████████████████

---

[33]  *Cf. Pike v. L'Nard Assocs., Inc.*, 1992 WL 365492, at *1 (E.D. Pa. Dec. 1, 1992) (holding that "[a]lthough there may be some evidentiary overlap, the causes of action are plainly distinct" and were not "related to" each other).

Mr. Miner's declaration nevertheless opines that the legal services are related because Kirkland worked on issues involving some particular products, and "Teva now seeks to acquire Mylan, including those very products, with the assistance of Kirkland. . . ."  Miner Decl. ¶ 22. That assertion, especially the implicit suggestion that Teva is attempting to take any products away from the Mylan Indirect Subsidiaries, is a non sequitur.  If Teva acquires the stock of Mylan N.V., each corporation that is currently indirectly owned by Mylan N.V., including Plaintiffs, will continue to own each and every product and asset that it owned previously.

Mr. Miner's argument is also inconsistent ███████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████



Their entire argument is that, in the course of FDA regulatory work on a few pharmaceutical products, Kirkland lawyers were exposed to some confidences that could be of use to Kirkland's work for Teva.  Mot. 4-6.  This claim has no factual basis.  Shumsky Decl. ¶¶ 55–56; Painter Decl. ¶¶ 52–56.

To be clear, if Plaintiffs had actual evidence that Kirkland was possibly breaching its obligation to protect confidential information, they could advance that claim. But here, there is not even a claim, and certainly no proof

_____

34

*(Cont'd on next page)*

whatsoever, that Kirkland actually provided any confidential information to Teva.  Fox Decl.
¶ 20; Desheh Decl. Ex. 9; Declaration of Jed S. Brody ("Brody Decl.") ¶¶ 3–5; Declaration of
Ashish Contractor ("Contractor Decl.") ¶ 5.  On the contrary, the undisputed evidence is that all
Kirkland lawyers have scrupulously maintained all of Plaintiffs' confidences, consistent with
these attorneys' ethical and legal obligations.  Kuhns Decl. ¶¶ 5–6, 11; Fox Decl. ¶ 20.

The Kirkland lawyers who represented the Mylan Indirect Subsidiaries ███████
██████████, and the Kirkland transactional lawyers working on the multinational transaction
between Teva and Mylan N.V., have submitted sworn declarations that there has been no
communication or use of any of Plaintiffs' confidences in the Teva/Mylan N.V. matter.  Fox
Decl. ¶ 20; Lefkowitz Decl. ¶¶ 35–36; Shumsky ¶ 56.  Kirkland's General Counsel also has
testified to the elaborate and technologically enforced ethical wall Kirkland erected and the
repeated reminders that have been sent out to ensure compliance.  Kuhns Decl. ¶¶ 6–11.  All of
this testimony is entitled to substantial deference.[35]  Moreover, Teva's CFO and Teva's financial
advisors have confirmed, again under oath, that they too have not received any confidential
information regarding the Mylan Indirect Subsidiaries (or even Mylan N.V.) from Kirkland or
anyone else.  Desheh Decl. ¶¶ 9–10; Brody Decl. ¶¶ 3–5; Contractor Decl. ¶ 5.

---

*(Cont'd from previous page)*

████████████████████████████████████████████████████████
████████████████████████████████████████████████████

[35] *Kaleta v. Clausi*, 2013 WL 1804203, at *2 (M.D. Pa. Apr. 29, 2013) (denying
disqualification motion after considering counsel's representations that there was no
conflict); *IMB Global, Inc. v. Moffett*, 1998 WL 842312, at *3 (Del. Ch. Nov. 12, 1998)
("Courts rely on the integrity and honesty of counsels' representations all of the time; it is an
unstated but always relied upon tenet of modern American litigation."); *see also* Painter
Decl. ¶ 51.

2.      **Even If The Possibility Of Overlapping Confidences Were Relevant To Determining Relatedness Here, Kirkland's Work For Plaintiffs Is Not Related To The Teva/Mylan N.V. Transaction.**

Even where (unlike here) possession of confidential information is relevant to the inquiry, the question is whether there is a "*substantial risk* that confidential factual information as *would normally have been obtained in the prior representation would materially advance the* client's position in the subsequent matter." Pa. Rule of Professional Conduct 1.9, comm. 3 (emphasis added). None of those conditions is present here.

Plaintiffs' claim is based entirely on Mr. Miner's assertion that Kirkland was "entrusted with unique knowledge of Mylan's commercial relationships and strategies" and "pricing strategies." Mot. at 10. There is no evidence that Mr. Miner even worked with Kirkland on each of the products he loosely discusses. ██████████████████████████████████

████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████  The granular information to which Mr. Miner refers simply is not the type that "*would normally have been obtained*" in representing the specified Mylan entities. *See* Miner Decl. ¶ 3, 5-12. ██████████████████████████

██████████████████████████████████

Fundamentally, Kirkland's work on the $42 billion Teva/Mylan N.V. transaction is not remotely related to the work performed by Mr. Shumsky or Mr. Lefkowitz. Painter Decl. ¶¶ 57–60. Mr. Miner, an in-house litigation attorney, has no foundation to opine about the role that lawyers play in highly complex, international commercial mergers and acquisitions. By contrast, David Fox is widely recognized as one of the country's leading mergers and acquisitions lawyers,

and he has very specific knowledge about the nature of the legal representation Kirkland is rendering to Teva.  Fox Decl. ¶ 3.

As Mr. Fox explains under oath, the work of his deal team "involves developing, implementing, and coordinating the extraordinarily complex legal strategies and operative corporate law principles worldwide."  Fox Decl. ¶ 22.  That effort is focused on a transaction with Mylan N.V.; it is not directed at or focused on Mylan N.V.'s direct or indirect subsidiaries, including Plaintiffs.  Fox Decl. ¶¶ 9–14.  ████████████████████████████

████████████████████████████████████████████████████████████

████████████████  That is fully consistent not only with Mr. Fox's experience in other deals, but also with experienced financial advisors.  Fox Decl. ¶ 26; Brody Decl. ¶¶ 3–5; Contractor Decl. ¶¶ 4–6.

Moreover, Mr. Fox's deal team is "not responsible for, and do not advise on, valuation methodology, including the information that should be considered or that may provide factual support for [such valuations]."  Fox Decl. ¶ 26.  Teva retained two premier financial advisors (Barclays PLC and Greenhill & Co.) to perform the valuation work.  The experts at those firms—and not any Kirkland lawyers—are advising Teva on valuation.  Fox Decl. ¶ 26; Brody Decl. ¶ 3; Contractor Decl. ¶ 3.  Indeed, the sheer magnitude of the transaction here dispels any notion that information about a few products would be of any interest to the financial advisors valuing Mylan, N.V. on a broad spectrum of matrices, none of which looked to any subsidiary's specific products or strategies.  Brody Decl. ¶¶ 3–5; Contractor Decl. ¶¶ 4–6.

Further, as Professor Painter observes in his Expert Report, if there truly were any information in the possession of the subsidiaries that was material enough to impact the broad valuation process undertaken by Teva's financial advisors, that information likely would have

been disclosed to the market in any event.  Painter Decl. ¶ 61.  This obligation—and the concomitant absence of any material disclosure—makes even more remote Plaintiffs' unsupported speculation that confidential information that Messrs. Shumsky and Lefkowitz might have been given was significant to the valuation process.  Painter Decl. ¶¶ 61, 63.

In view of the foregoing, ████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████ █ ████████████████████
████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████  And Kirkland will, of course, never deviate from its duty to protect all confidences in accordance with the rules of professional responsibility and other legal requirements.  Kuhns Decl. ¶¶ 5–6, 11; Fox Decl. ¶ 20.

In return, though, Kirkland has every right to insist that Plaintiffs live up to their part of that bargain.  ████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████  In the factual context of this case, that plainly requires the denial of their motion.

36  *See Pacemaker Yacht Co., Etc. v. NLRB*, 663 F.2d 455, 459 (3d Cir. 1981) (the "settled rule of contract interpretation that contract language should not be interpreted to render the contract promise illusory or meaningless") (citation omitted)); *Lesko v. Frankford Hosp.- Bucks Cty.*, 15 A.3d 337, 342 (Pa. 2011) ("[A court] will not interpret one provision of a contract in a manner which results in another portion being annulled.").

**E.      Plaintiffs Have Failed To Establish Irreparable Harm, That The Balance Of The Hardships Tips In Their Favor, Or That An Injunction Is In The Public Interest.**

  **1.      Plaintiffs Have Failed To Establish Irreparable Harm.**

Establishing the critical element of irreparable harm requires "a clear showing of *immediate* irreparable injury."[37]  A *risk* of *future* harm is insufficient, *id.*, as is the *possibility* of harm.[38]  Harm may not be presumed—such a presumption "deviates from the traditional principles of equity."[39]  Finally, the issue of harm is independent of whether a conflict is found, because an ethical breach does not obviate the requirement of proof of a "specific or immediate danger that confidential information will be released, or that it has been released in the past."[40]

Plaintiffs' argument is simply that "the ***potential*** disclosure of information disclosed in the course of the attorney-client relationship constitutes irreparable harm."  Mot. at 13 (emphasis added).  Not only does that argument violate the foregoing authorities, ████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████[41]

---

[37]  *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (internal quotations omitted).

[38]  *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

[39]  *Ferring Pharms.*, 765 F.3d at 216.

[40]  *End of the Roads Tr. v. Terex Corp.*, 2002 WL 242464, at *3 (D. Del. Feb. 20, 2002); *accord Boston Scientific Corp. v. Johnson & Johnson Inc.*, 647 F. Supp. 2d 369, 374-75 (D. Del. 2009) (denying motion to disqualify because the law firm had instituted an ethical wall).

[41]  *See, e.g., Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 582–85 (D. Del. 2001) (finding waiver where evidence showed Apple agreed not to seek disqualification); *Certain Underwriters at Lloyd's v. Sidley Austin LLP*, 2012 WL 8017009 (Mass. Sup. Ct. Mar. 6, 2012) (estopping plaintiff to seek disqualification based on a ground expressly waived by the engagement letter).

The Third Circuit has held that the mere "[r]isk of harm if information is inadvertently disclosed . . . is not sufficient to satisfy the standard for granting a preliminary injunction," and that "[t]here must be an imminent threat of the allegedly harmful disclosure."[42] Yet Plaintiffs only offer impermissibly vague, conclusory, and speculative allegations of potential future harm based on a single declaration from Mylan Inc.'s in-house litigation counsel. Painter Decl. ¶ 65. The Miner Declaration contains "no evidence whatsoever that [Kirkland or its attorneys] have shared [Mylan Inc.'s] [purportedly] proprietary information or knowledge with [Teva], much less employed such data on behalf of [Teva] in the [proposed acquisition of Mylan, N.V.]."[43]

In contrast to Mr. Miner's Declaration, Kirkland's lawyers and others have testified:

- Kirkland properly instituted and enforced an elaborate ethical walls screening off the attorneys working on the proposed transaction from the attorneys who worked on matters for one or more of the specific Mylan entities. *See* Kuhns Decl. ¶¶ 6–11; Shumsky Decl. ¶ 56; Fox Decl. ¶ 20; Painter Decl. ¶ 66.[44]

- ███████████████████████████████████████████████████████

- All relevant actors—Kirkland, Teva, and Teva's investment bankers—have testified that Kirkland did not disclose any non-public information regarding its work for the specific Mylan entities.[45] Fox Decl. ¶ 20; Shumsky Decl. ¶ 24; Desheh Decl. Ex. 9; Brody Decl. ¶¶ 3–5; Contractor Decl. ¶ 5.

---

[42] *Continental Grp. v. Amoco Chemicals Corp.*, 614 F.2d 351, 358-59 (3d Cir. 1980).

[43] *GEO Specialty Chem., Inc. v. Husisian*, 923 F. Supp. 2d 143, 148 (D.D.C. 2013). The Miner Declaration, like the attorney declaration in *GEO Specialty Chem.*, is "full of hypotheticals, assumptions, and possibilities, rather than likelihoods, actualities, and forthcomings." *Id.* at 149.

[44] On similar facts, the court in *CenTra, Inc. v. Estrin*, 639 F. Supp. 2d 790, 815–17 (E.D. Mich. 2009), rejected claims of irreparable harm based on the alleged risk of disclosure, because there were de facto and formal screens in place to prevent any such disclosure, and because the alleged risk was purely speculative.

[45] *See Kaleta,* 2013 WL 1804203 at *2.

- ███████████████████████████████████████████████████████
███████████████████████████████████

The Miner Declaration also fails to provide any foundation for its assumption that Teva and its financial advisors had an incentive to obtain confidential information from Mr. Shumsky and Mr. Lefkowitz. Despite no identified experience in corporate transactions, much less those as large and complex as the $42 billion acquisition at issue here, Mr. Miner baselessly *speculates* that Teva "would surely relish" or "would like to know" the vaguely described confidential information. *See* Miner Decl. ¶ 21. But "bare allegations" of what *might* occur "are of no relevance because the Court must decide whether the harm will *in fact* occur.[46] Kirkland's evidence from Teva's financial advisors concerning the information they actually consider completely undermines Plaintiffs' evidence.[47] Fox Decl. ¶ 26; Brody Decl. ¶¶ 3–5; Contractor Decl. ¶¶ 4–6. Accordingly, Plaintiffs object failure to "produce *affirmative evidence* indicating that [they] will be irreparably harmed [means] [preliminary] relief be denied."[48]

### 2. Plaintiffs Have Failed To Establish That The Hardships Tip In Their Favor.

---

[46] *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (emphasis in original).

[47] Plaintiffs' cases are not to the contrary. In *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 260 (Pa. 1992), the court found that the "danger of revelation" was "so great that injunctive relief is warranted." Plaintiffs have offered no such evidence here. In *Dougherty v. Philadelphia Newspapers, LLC*, 85 A.3d 1082, 1085-1086 (Pa. Super. Ct. 2014), the plaintiff came forward with "facts establishing a colorable claim" of actual disclosure of work product and privileged communications. There are no such "facts" here. And in *The Hyman Companies, Inc. v. Brozost*, 964 F. Supp. 168, 175 (E.D. Pa. 1997), the court analyzed the allegedly confidential materials, finding that some materials were confidential but that "much of the information . . . does not qualify for trade secret protection, and that its disclosure would not flout [the attorney's] fiduciary obligations." Here, Plaintiffs have not filed (even under seal) any of the allegedly confidential documents, precluding any analysis to test Mr. Miner's conclusory statements.

[48] *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987) (emphasis added).

35

Even if Plaintiffs could establish irreparable harm, the court additionally "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[49]  Moreover, where, as here, "the preliminary injunction [sought] [would] provides[] for mandatory relief [in that it changes the status quo], it is particularly appropriate to weigh the possible harm to *other interested parties*.  The injudicious issuance of an injunction might well result in unnecessary damage to *other parties*, perhaps as irreparable and more grave than the harm that might ensue from the denial of the injunction."[50]

███████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

By contrast, disqualifying Kirkland—even if only preliminarily—would visit an immediate, substantial, and quite possible permanent hardship upon Teva and Kirkland.  Teva would be deprived of the services of the attorney and law firm that it most trusts based on their longstanding and successful work on other similarly complex transactions.  Desheh Decl. ¶¶ 14–16; Fox Decl. ¶¶ 26–28; Painter Decl. ¶ 67.  Additionally relevant is the fact that the proposed $42 billion acquisition is part of competing, complex transactions involving three multi-billion, multi-national companies, implicating the laws of at least four jurisdictions.  Fox Decl. ¶ 23; Desheh Decl. ¶ 15.  During that time, Kirkland's corporate attorneys have developed deep institutional knowledge of the sophisticated, cross-jurisdictional legal issues involved that would be difficult for another law firm to re-create.  Desheh Decl. ¶¶ 15–16; Fox Decl. ¶¶ 27–28.

---

[49]  *Winter*, 555 U.S. at 24 (internal quotations omitted).

[50]  *Punnett*, 621 F.2d at 587–88 (emphasis added).

For Kirkland, the hardship imposed would be immediate and lasting.  As a practical matter, disqualification could oust Kirkland from this matter permanently.  Fox Decl. ¶ 28.  Having been forced to incur the opportunity costs of having that counsel get up to speed, Teva would be hard pressed to resume Kirkland's engagement, even if the injunction were lifted.  Fox Decl. ¶ 28; Desheh Decl. ¶ 16.  Moreover, an injunction barring Kirkland from working on this high-profile matter could damage—undeservedly—the reputations of Kirkland and the individual attorneys involved.  Fox Decl. ¶ 28.  The balance of the hardships thus tips overwhelmingly in favor of Kirkland and Teva.[51]

### 3.      Plaintiffs Have Failed to Establish That An Injunction Is In The Public Interest.

Courts "should pay particular regard for the public consequences of employing the extraordinary remedy of injunction."[52]  An injunction is unwarranted when it would "require the court to become involve[d] in the internal business affairs of the parties."[53]  Similarly, issuing an injunction does not serve the public interest where "the threat of an injunction is employed simply for undue leverage in negotiations."[54]

---

[51]  As the *CenTra* court recognized, depriving a party of the services of the law firm it has chosen and with which it has worked for years is "a drastic measure that in many cases could work an injustice on the innocent client."  *CenTra*, 639 F. Supp. 2d at 817 (internal quotations omitted).

[52]  *Winter*, 555 U.S. at 24; *see also Treferlner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 598 (W.D. Pa. 2009).

[53]  *Allegheny Energy, Inc. v DQE, Inc.,* 171 F.3d 153, 167 (3d Cir. 1999) (internal quotations omitted).

[54]  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 396 (2006).

Even as Teva is seeking to acquire Mylan N.V., Mylan N.V. is pursuing a hostile takeover of Perrigo Company, plc ("Perrigo"), an Irish pharmaceutical company.[55] *See* Desheh Decl. ¶ 11.  If completed, Mylan N.V.'s hostile takeover would preclude Teva's acquisition. Desheh Decl. ¶ 16.  For Mylan N.V., delay is a critical tactical ally, because under Dutch law it must obtain shareholder approval.  Desheh Decl. ¶ 16.  Plaintiffs' motion therefore is a thinly-disguised delaying tactic orchestrated by Mylan N.V. to give Mylan, N.V. additional time to try to complete its hostile takeover.

This Court should not intervene in an extremely complex international transactions of tens of billions of dollars, particularly based on Plaintiffs' astoundingly deficient evidentiary showing, by tipping the scales in Mylan N.V.'s favor.  For this reason as well, Plaintiffs' motion should be denied.

## IV.    CONCLUSION

For each of the foregoing reasons, Plaintiffs' motion should be denied.

Dated:  May 20, 2015                           K&L GATES LLP


                                               By:____/s/ Richard W. Hosking_____
                                                   Richard W. Hosking, PA 32982
                                                   Melissa J. Tea, PA 80195
                                                   K&L GATES LLP
                                                   210 Sixth Avenue
                                                   Pittsburgh, Pennsylvania  15222-2613
                                                   Telephone:  (412) 355-6500
                                                   Facsimile:  (412) 355-6501
                                                   Richard.hosking@klgates.com
                                                   Melissa.tea@klgates.com

---

[55]  Tan Decl. ¶ 5, Ex. D (Mylan N.V. Schedule 14A Proxy), at 2–14.

GIBSON, DUNN & CRUTCHER LLP

Kevin S. Rosen, (admitted pro hac)
Daniel S. Floyd, (admitted pro hac)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  (213) 229-7000
Facsimile:  (213) 229-7520
KRosen@gibsondunn.com
DFloyd@gibsondunn.com

Counsel for Defendant,
KIRKLAND & ELLIS LLP

101932124

1