IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYLAN INC., MYLAN PHARMACEUTICALS INC., MYLAN TECHNOLOGIES INC. and MYLAN SPECIALTY LP,<br><br>                    Plaintiffs,<br><br>        v.<br><br>KIRKLAND & ELLIS LLP,<br><br>                    Defendant. | Civil Action No. 2:15-cv-00581-JFC-LPL |

## DEFENDANT KIRKLAND & ELLIS LLP'S
## MOTION TO STRIKE THE DECLARATION OF DOUGLAS MINER

Defendant Kirkland & Ellis LLP ("Kirkland"), by and through its undersigned counsel, hereby moves this Court to exclude the Declaration of Douglas Miner in Support of Plaintiffs' Motion for Preliminary Injunction.

### I.        INTRODUCTION

Plaintiffs filed a single declaration in support of their motion—the declaration of Douglas Miner, an in-house litigation lawyer at Mylan Inc.   Under governing Third Circuit law, a preliminary injunction can be only granted based upon evidence properly before the Court.[1]   The Miner declaration, however, lacks foundation, is impermissibly vague, and contains improper opinions.   It therefore should be stricken or disregarded.

---

[1]   *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000).

## II.    ARGUMENT

### A.    Mr. Miner Cannot Testify To What Materials Kirkland Received

Throughout his declaration, Mr. Miner purports to identify information and materials that were given to Kirkland.  But Mr. Miner does not say whether *he* personally ever gave any materials or information to anyone at Kirkland.  Instead, he uses the passive voice or refers generically to "Mylan."[2]  This is improper.  Rule 602 of the Federal Rules of Evidence provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Mr. Miner provides no such foundation here.  He does not identify a single meeting in which he allegedly gave a "confidential" document to a Kirkland attorney.  He does not identify a single email in which he allegedly sent "confidential" information to a Kirkland attorney.  And he does not identify a single conversation in which he allegedly relayed "confidential" information to a Kirkland attorney.  Indeed, Mr. Miner does not even claim to have worked with Kirkland on any of the matters or products he purports to describe.  As such, there is no foundation for his testimony.

### B.    Mr. Miner Cannot Testify To What Information Is Relevant To Teva

In paragraph 21 of his declaration, Mr. Miner purports to opine on what information would be relevant to Teva.[3]  But Mr. Miner has no personal knowledge of what information Teva would "relish" or "like to know."  Nor is he qualified to opine on what information would be

---

[2] *See, e.g.*, Miner Decl., ¶ 4 ("Kirkland was provided"), ¶ 6 ("K&E has been entrusted with"), ¶ 9 ("Mylan shared with Kirkland"), ¶ 10 ("Kirkland . . . received"), ¶ 11 ("Mylan again provided Kirkland"), ¶ 12 ("Mylan continued to provide Kirkland with"), ¶ 14 ("Mylan . . . provid[ed]"), ¶ 21 ("Kirkland has been entrusted with. . . .   Kirkland has been provided with. . . .  It has also been provided with"), ¶ 22 ("Kirkland . . . has been given access to").

[3] *See* Miner Decl., ¶ 21 ("Kirkland has been entrusted with unique knowledge of Mylan's commercial relationships and strategies – information that a competitor such as Teva would surely relish. . . .  Such insight into Mylan's current and future business efforts is again the very type of information Teva would like to know. . . .").

material to a proposed acquisition valued at approximately $42 billion.  He is a litigation attorney in Mylan Inc.'s legal department, where he has worked on non-patent litigation matters since 2008.[4]  He does not set forth, nor does he appear to have, any experience or background in negotiating mergers and acquisitions, finance, or investment banking.  Because there is no foundation for his inadmissible opinion and speculation about what information might be relevant to Teva in valuing Mylan N.V., his purported opinions and speculation must be stricken.

### C.    Mr. Miner Does Not Properly Describe The Materials He Claims Kirkland Received

Throughout his declaration, Mr. Miner asserts that Kirkland received allegedly "confidential" and "proprietary" information and materials.[5]  But his descriptions are entirely vague and generic.  He does not identify a single document with specificity.  He does not describe with particularity any information that Kirkland allegedly received.  The law requires more.  Claims of confidentiality must be supported with specific facts.[6]  Mr. Miner's vague and generalized descriptions do not suffice.  They should be stricken or disregarded.

### D.    Mr. Miner Does Not Properly Describe Plaintiffs' Alleged Injury

Throughout his declaration, Mr. Miner vaguely alludes to alleged injuries that Plaintiffs will sustain if preliminary relief is not granted.  For instance, in Paragraph 23, he suggests that

---

[4] *See* Miner Decl., ¶ 1.

[5] *See, e.g.*, Miner Decl., ¶¶ 4, 6, 9, 10, 11, 12, 14, 21, 22.

[6] *See, e.g.*, *West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (dismissing claim that defendant disclosed proprietary information where plaintiff "did not plead facts regarding the nature of the disclosed information, who disclosed it, or when it was disclosed").  *See also.Dynetix Design Solutions Inc. v. Synopsys Inc.*, 2013 WL 1366046, at *1 (N.D. Cal. Apr. 3, 2013) ("particularized showing" necessary to establish confidentiality; "vague statement[s]" insufficient); *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, 2012 WL 6049746, at *3 (D. Ariz. Dec. 5, 2012) (rejecting "vague and speculative" claims of confidentiality); *Graff v. Haverhill*, 2014 WL 360013, at *9 (S.D. Ohio Feb. 3, 2010) (rejecting as insufficient "vague testimony" about allegedly confidential "development plans and business strategies").

Kirkland is somehow "work[ing] against [Plaintiffs'] interests" because it is representing Teva in connection with the acquisition of Mylan N.V. and information that Teva would "relish" or "like to know."  But Mr. Miner nowhere explains how Kirkland's mere representation of Teva in connection with the proposed acquisition of Mylan N.V. harms *Plaintiffs*.  Nor does Mr. Miner identify the harm that would follow if *Plaintiffs*—indirect subsidiaries of Mylan N.V.—were acquired by Teva.  Simply put, Mr. Miner's vague allegations do not (and cannot) establish irreparable harm.[7]

**E.     Mr. Miner Cannot Testify About The Conflict Waiver**

In paragraphs 22 and 23, Mr. Miner offers his unfounded opinions about the meaning, scope and validity of the conflict waiver, and claims the omnipresent, generic "Mylan never would have signed" the conflict waiver if some unknown person knew what Mr. Miner knows now.[8]  But Mr. Miner did not sign the conflict waiver; Jill Ondos did.  Mr. Miner does not (and cannot) claim to have negotiated or discussed the conflict waiver with anyone at Kirkland prior to its execution.  Therefore, his views on the conflict waiver are improper legal opinions without

---

[7] *See, e.g.*, *Mendelsohn, Drucker & Assocs., P.C. v. Titan Atlas Mfg.*, 2013 WL 247245, at *3 (E.D. Pa. Jan. 23, 2013) ("conclusory affidavit" insufficient to show irreparable harm) (internal quotations omitted); *Smarter Agent, LLC v. Mobilerealtyapps.com, LLC*, 889 F. Supp. 2d 673, 676 (D. Del. 2012) (rejecting "generalized allegations" of "irreparable harm" in declarations containing "no specificity at all") (internal quotations omitted).

[8] *See* Miner Decl., ¶¶ 22 ("In my view, this 'advance waiver' language does not permit Kirkland to represent Teva in connection with Teva's unsolicited effort to acquire Mylan N.V. and its subsidiaries . . . as that is plainly an engagement 'related' to the services Kirkland rendered, is rendering and was expected to continue rendering to Mylan. . . .  [T]he law firm that Mylan appropriately understood had committed its undivided loyalty to Mylan."), 23 ("As an attorney for Mylan, I can say with absolute certainty that if Kirkland had disclosed to Mylan that it believed its engagement letter would permit Kirkland to work against Mylan's interests with respect to, among other things, the very products that Kirkland had been and continued to advise Mylan on, Mylan never would have signed that engagement letter.  In this regard, there was no informed and knowing waiver of the type of conflict implicated by Kirkland's current representation of Teva.").

foundation.[9]  Nor is there any foundation for his speculation as to whether Jill Ondos would have

signed under different circumstances.[10]  Paragraphs 22 and 23 should be stricken in their entirety.

### III.    CONCLUSION

For each of the foregoing reasons, the Court should strike the Declaration of Douglas

Miner from the record in this matter.


Dated:  May 22, 2015                         K&L GATES LLP


                                             By: /s/ Richard W. Hosking
                                                 Richard W. Hosking, PA 32982
                                                 Melissa J. Tea, PA 80195
                                                 K&L GATES LLP
                                                 210 Sixth Avenue
                                                 Pittsburgh, Pennsylvania  15222-2613
                                                 Telephone:  (412) 355-6500
                                                 Facsimile:  (412) 355-6501
                                                 richard.hosking@klgates.com
                                                 melissa.tea@klgates.com

---

[9]   Fed. R. Evid. 702 (lay opinion admissible only where "rationally based on the witness's perception"); *see also Jones v. Judge Technical Servs. Inc.*, 2013 WL 5777159, at *4 (E.D. Pa. Oct. 25, 2013) (declaration "provide[d] impermissible legal conclusions"); *Tegg Corp. v. Beckstrom Elec. Co.*, 2008 WL 2682602, at *11 (W.D. Pa. July 1, 2008) (affidavits "contain[ed] improper legal conclusions," such as that the software was "substantially similar", "similar in look, feel and purpose" and "strikingly similar"); *Carey v. Beans*, 500 F. Supp. 580, 583 (E.D. Pa. 1980) (striking "legal inferences and conclusions" from declaration).

[10]  *See, e.g.*, *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 142 (D. Del. 2013) (granting motion to preclude fact witness from "testify[ing] about anything speculative or hypothetical, including what he would have done in hypothetical negotiations"); *Cohen v. Chase Bank, N.A.*, 679 F. Supp. 2d 582, 594 n.11 (D.N.J. 2010) (refusing to consider, in interpreting an arbitration provision, plaintiff's "speculation regarding what she 'would have' done" had the underlying facts been different).

GIBSON, DUNN & CRUTCHER LLP

Kevin S. Rosen (admitted pro hac)
Daniel S. Floyd (admitted pro hac)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  (213) 229-7000
Facsimile:  (213) 229-7520

Counsel for Defendant,
KIRKLAND & ELLIS LLP

101932201.6